## KELLY v. FAHRNEY.*

### (Circuit Court of Appeals, Seventh Circuit. April 14, 1903.)

### No. 931.

1. ASSUMPSIT—DEFENSE ADMISSIBLE UNDER GENERAL ISSUE.

   In an action of assumpsit defendant may show, under a plea of the general issue, that plaintiff by his own act prevented defendant from performing the contract sued on, and the fact that such act amounted to a fraud does not require it to be specially pleaded, since the fraud is not of the essence of the defense.

2. CONTRACT—ACTION FOR BREACH—DEFENSES.

   Plaintiff and defendant, who were both stockholders in a corporation, entered into a contract by which defendant agreed, for a consideration to be rendered by plaintiff, to transfer to him a stipulated amount of stock in the corporation. All the stock which defendant owned, excepting two shares, had been obtained from plaintiff, as the latter knew, and the certificate of transfer had not been recorded as required by the law of the state where the corporation was organized, which provided that, unless so recorded, the transfer should be void as against creditors. *Held*, that proof that plaintiff, before he became entitled to the stock under the contract, procured an action to be brought against himself by a creditor, and all the stock owned by defendant, except the two shares, to be attached and sold to pay his own debt, constituted a good defense to an action by plaintiff for failure to deliver the stock under the contract.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

This is an action in assumpsit upon an alleged verbal agreement made December 26, 1897, between two members of a corporation, by which the plain-

---

* Rehearing denied May 6, 1903.

tiff in error, the secretary of the company, undertook to place on the market $100,000 of the second mortgage bonds of the company, and the defendant agreed, in case he should so do, to assign him $110,000 of the par value of the capital stock of the company. The defendant (the defendant in error here) pleaded the general issue, and there was a verdict for the defendant, from which the plaintiff appealed.

The White Cliffs Portland Cement & Chalk Company was a corporation of the state of Arkansas, with stock amounting to $1,000,000 in shares of $25 each, the number of shares being 40,000. Of the shares originally issued to the plaintiff he assigned 11,500 shares to the defendant as a bonus on the purchase by him of the first mortgage bonds of the company; but no certificate of the transfer of stock was deposited with the county clerk of the county court of the county in which the company transacted its business, as required by the laws of the state of Arkansas. At the time of the alleged agreement the defendant was the owner of but 2 shares. Of the remaining shares, 10,420 had been transferred to his brother William H. Fahrney, and the remainder to others. Whether any such agreement was in fact made was a disputed question at the trial, and was submitted to the determination of the jury; and touching that no complaint is made.

The errors assigned are as follows:

(1) The court erred in permitting the following questions to be answered by the plaintiff on cross-examination under the objection of plaintiff's counsel, viz.: "Mr. Kelly, before you left Chicago, from one to two weeks, had you not outlined two lawsuits to be brought against Fahrney, and had not the complaint, as we call it in the Arkansas courts, been prepared by Judge Owen setting up this contract, which it was there alleged was made with you and John Kelly, and alleging that you had then made a demand for this stock, that the demand had been refused, that you had sold the bonds to Bartol and others, and that after the sale made demand, and that Fahrney had refused to transfer the stock? A. I asked Judge Owen to make a demand at that time when I thought that this deal was going to be consummated, and, upon that demand being refused, I authorized him to take steps to bring suit when he got down to Arkansas."

(2) "Didn't you and Owen go to Texarkana, to the office of Scott & Jones, and employ Scott & Jones to assist in those cases, and was not the bringing of those suits discussed in the office of Scott & Jones at that date? A. Yes, the case was discussed there."

(3) "While you were in Scott & Jones' office discussing the bringing of the suits brought against Fahrney for refusing to deliver the stock, did Paul Jones suggest that he had a claim in favor of Col. Coulter against you and your brother, and that, if the Fahrney stock had not been properly assigned in the office of the county clerk, he would bring an additional suit, and levy on the Fahrney stock, and sell it, and get it for Coulter?"

(4) In admitting in evidence under a plea of the general issue the transcript of the case of D. B. Coulter v. W. J. Kelly et al., in the circuit court of Little River county, Arkansas, over the objection of the plaintiff.

(5) In overruling the motion made by the plaintiff to strike out the testimony relative to the suit in the Little River circuit court of Arkansas in the case of D. B. Coulter v. W. J. Kelly, and subsequently in overruling plaintiff's motion to strike from the record the transcript in that case.

(6) In charging the jury as follows: "If you find that the plaintiff has established his case as to this point [the making of the agreement], then you should consider the evidence touching the claim of the defendant that the plaintiff himself made it impossible for him to transfer the stock in question. As to this matter, if plaintiff was actually indebted to Coulter upon notes sued on by him (Coulter), it would hardly seem to be of any material importance in this litigation as to whether or not complainant's sympathies in that suit were with Coulter. The fact does not impress me as material in this case. However, you will consider all these facts. I simply wish to aid you as to these facts I am communicating to you for your consideration. Ordinarily speaking, one cannot prevent another from performing a contract and at the same time hold them liable for such nonperformance."

(7) The court erred in overruling plaintiff's motion for a new trial.

Ernest D. Owen and Wm. A. Foster, for plaintiff in error.

Henry C. Noyes, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge, after stating the facts, delivered the opinion of the court.

The questions embodied in the first two assignments of error had reference to the action of the plaintiff in prosecuting two suits against the defendant in the state of Arkansas upon the same alleged agreement declared upon in this action; the testimony elicited tending to show that the agreement alleged was made with the plaintiff and John Kelly jointly, and not with the plaintiff individually, and also tending to show that the demand for the stock was made when no sale of bonds had been effected, and the contemplated sale was never in fact consummated. These assignments are not seriously insisted upon at the bar, and we perceive no well-founded objection to the evidence. It went directly to plaintiff's cause of action.

The third, fourth, and fifth assignments of error may be considered together. They go to the right of the defendant to prove under the plea of the general issue that the plaintiff prevented the defendant from performing the contract. Under such plea the defendant may prove any fact which shows that the contract is not obligatory upon him, and, as Mr. Chitty observes, "most matters in discharge of the action which show that at the time of the commencement of the suit the plaintiff had no subsisting cause of action." 1 Chitty on Pleading, 476, 478. So, also, in Mines v. Moore, 41 Ill. 273, 276, it is said: "And in an action of assumpsit almost any defense showing the satisfaction or discharge of the debt may be shown under the general issue." See, also, Wilson v. King, 83 Ill. 233, 238. The contract here, if such there was, manifestly contemplated the transfer by the defendant to the plaintiff of 4,400 shares of the 11,500 shares under his control or influence; he having in his own name but 2 of the shares. That was the only source from which the defendant could procure the stock, as the plaintiff well knew. The obligation of the defendant, then, was to transfer to the plaintiff, upon fulfillment of the contract on his part, 4,400 shares of these 11,500 shares so controlled by him. It is undoubted law that the conduct of one party to a contract, which prevents the other party from performing his part, is an excuse for nonperformance. United States v. Peck, 102 U. S. 64, 26 L. Ed. 46. The evidence produced tended to show that Coulter was a creditor of the plaintiff to the amount of $10,000; that the plaintiff procured that creditor to bring suit thereon in Arkansas, and therein to attach these 11,500 shares of stock, and subject them to the payment of that debt, under the law of that state that a transfer of stock is void as to creditors if certificate of the transfer be not filed as required; that in such suit so brought the 11,500 shares of stock were sold, purchased by Coulter, and the amount paid therefor was applied upon the judgment against the plaintiff. We see no reason why this defense could not be proven under the general issue. The authorities cited to the effect that fraud as a defense must be specially pleaded are not applicable. The question is whether the plaintiff by his conduct

prevented performance by the defendant. The moral obliquity of the act, if any, is not material to the fact. If it were a moral fraud for the plaintiff to procure his creditor to attach the stock, still the fraud is not of the essence of the defense, which is that the plaintiff by his act, whether fraudulent or not, prevented the defendant from performance; and that fact, we think, may be shown under the general issue.

The sixth assignment has reference to the charge to the jury stated in the assignment. We see no just objection which the plaintiff can make to the charge. The excerpt in the assignment contains all that the court said upon the subject of this particular defense. It certainly was most favorable to the plaintiff. The law of the case is properly stated, and we think it was proper for the jury to consider all the facts and circumstances which surrounded the action of the plaintiff, with respect to the part which he took in connection with the Coulter suit, that bore upon the question whether he was thereby seeking to prevent performance by the defendant. The engagement of Kelly to sell the bonds was not carried out until July, 1898. If in the April previous he procured, as the testimony tended to show and as the jury have found, the 11,500 shares of stock, which he knew was the only stock which the defendant could deliver to him, to be attached and sold to pay his own debt, he cannot justly claim compensation for his subsequent successful efforts to sell the bonds by holding the defendant liable upon a contract to deliver stock which the plaintiff had procured to be taken to pay his own debt.

The seventh assignment of error involves the motion for a new trial. It is the settled rule in the federal courts that the ruling of the trial court upon motion for a new trial is not the subject of review.

BAKER, Circuit Judge (concurring). I think that the contract as pleaded calls, not for 4,400 specific shares then owned or controlled by Fahrney, but for that amount of stock generally; that the evidence in behalf of Kelly fails prima facie to prove the contract as pleaded; and that it is therefore immaterial whether Fahrney's substantive defense was competent and sufficient to meet the declaration.

The judgment will be affirmed.