### ARCADE & A. R. CORPORATION v. KANN.

(Circuit Court of Appeals, Second Circuit. December 6, 1922.)

No. 70.

1. **Appeal and error** ⊜⟹1010(1)—**On writ of error, court only determines whether findings supported by some evidence.**

On writ of error the court examines the record only to ascertain whether there is some evidence to support the findings of fact.

2. **Railroads** ⊜⟹194(6)—**Finding of notice to purchasers at foreclosure sale justified.**

Though some of the purchasers of a railroad at foreclosure sale had no actual notice that plaintiff held the title to certain engines as col-

---

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lateral security for an indebtedness, where there was evidence from which it might be inferred that they with the other purchasers were acting as a group and not individually, the District Court was justified in so finding.

3. **Railroads** 𝕮⟹194(2)—**Notice to purchasers at foreclosure sale binding on subsequent purchasers.**

Where purchasers of a railroad at foreclosure sale had actual notice that plaintiff held the title to certain engines as collateral security for an indebtedness, their subsequent acts could not free any later purchasers or nominees of the notice given the original purchasers.

4. **Appeal and error** 𝕮⟹1051(1)—**Admission of offer to buy harmless, where there was ample evidence to support finding of value.**

In an action for conversion of engines, where there was ample evidence on which to base the court's finding of value, the admission of a letter offering to buy the engines at a certain price, if error, was harmless.

In Error to the District Court of the United States for the Western District of New York.

Action by William L. Kann against the Arcade & Attica Railroad Corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

George A. Larkin, of Olean, N. Y., for plaintiff in error.

Dirnberger & Moore, of Buffalo, N. Y. (Francis J. Maloney, of Buffalo, N. Y., of counsel), for defendant in error.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. [1] The cause was tried before the court without a jury, and, while not printed in the record on review, it appears from the decision and the judgment that the parties filed a stipulation in writing waiving a jury. The court filed findings of fact and conclusions of law. Notwithstanding the settled rule to which we have recently called attention, argument is made as to the weight of evidence in certain particulars. We therefore repeat that we examine the record on writ of error solely to ascertain whether there is some evidence to support the findings of fact. U. S. of America and the City of New York v. George Benedict, etc. (C. C. A.) 280 Fed. 76; American Concrete Steel Co. v. Charles F. Hart, 285 Fed. 322, decided C. C. A., Second Circuit, October 31, 1922.

The facts found by the court follow:

Buffalo, Attica & Arcade Railroad (hereinafter called Attica Company) was a railroad corporation organized under the laws of New York, and owned and operated a steam railroad about 25 miles long, extending from Arcade to Attica, Wyoming county, N. Y., prior to April 28, 1913. The General Railways Company was a Delaware business corporation, which had an office in Arcade. Arcade Finance Corporation was a New York business corporation, which succeeded to all of the property and rights of General Company about October 7, 1916, and thereafter had an office in Arcade. On April 28, 1913, there was a trust mortgage to Interstate Trust & Banking Company upon all of the property of Attica Company, under which $200,000 of trust coupons had been issued. At that time the estate of Frank Goodyear,

deceased, and the estate of Charles W. Goodyear, deceased, owned all of the outstanding bonds and capital stock of Attica Company.

About April 28, 1913, the executors of these two estates entered into an agreement under which an option was given to General Company to purchase the stock and bonds of Attica Company and, during the option period, to operate the railroad. As General Company, being a business corporation, had no authority under the laws of New York to operate the road as a common carrier, it was provided in and intended, by the agreement supra and the modifications thereof, that General Company would operate the road in the name of Attica Company and that officers and representatives of General Company should be elected to the board of directors of Attica Company for the purpose of such operation. It was further provided that General Company was to receive the net corporate income derived from the railroad, and that all equipment or rolling stock purchased after July 1, 1913, should remain the property of General Company, subject to removal by it upon the termination of the option agreement. Shortly after April 28, 1913, General Company undertook the operation of the railroad and its successor, Arcade Finance Company, continued such operation through the instrumentality of Attica Company, as its agent. During the period of operation, the road was run at a substantial loss. While operating the road with Attica Company as its agent, General Company caused three locomotives (designated as Nos. 8, 9, and 10) to be purchased. These locomotives were bought with money loaned by Kann, the plaintiff below, to General Company.

As and when these locomotives were purchased with the money advanced by Kann, the title to the same was transferred by assignment to Kann as collateral security for the repayment of the loans and advances made by him. The sum of $3,000 loaned by Kann to purchase engine No. 8 was repaid to him, and he gave to Attica Company, as the agent or representative of the General Company, a bill of sale thereof. Subsequently, however, and about June 1, 1916, Kann made further advances and loans of money to the General Company, which were paid into the treasury of Attica Company, and thereupon General Company duly transferred engines Nos. 8, 9, and 10 to Kann as collateral security for the repayment of these loans. The ownership of these locomotives was acknowledged by Attica Company in a lease of the three locomotives, made by Kann to Attica Company, dated June 1, 1916, and Kann ever since has held and continued to hold the three locomotives as security for the repayment of moneys loaned and advanced by him to the General Company until the conversion infra by defendant below.

About February 28, 1917, Arcade Finance Company ceased operation of the railroad and delivered it to Attica Company. At the time the railroad property was relinquished to the Attica Company, Kann made claim to the three locomotives, and Attica Company recognized his ownership therein by arranging for the payment of a rental for the use of one of said locomotives. In March, 1917, a receiver of Attica Company was appointed. Such proceedings were then had that the Attica Company railroad was sold under a judgment of foreclosure

in a suit brought by the trust company in the New York Supreme Court, Wyoming county, to foreclose the mortgage supra. The property sold at foreclosure sale included the three engines.

The District Court found that:

The "railroad was sold * * * to a syndicate of men residing at Arcade and Olean, N. Y., consisting of Messrs. Knight, Hogue, Conroy, O'Dell, and Eddy, who thereupon or shortly thereafter caused the defendant corporation to be organized, and the said railroad property to be transferred to it, and the defendant, when taking possession of the said railroad, also took possession of the three locomotives, known as B., A. & A. engines, Nos. 8, 9, and 10. * * * Prior to the said receiver's sale, the purchasers, Messrs. Knight, Hogue, Conroy, O'Dell, and Eddy, had notice that the plaintiff claimed to be the owner of the said engines 8, 9, and 10, and purchased the said railroad at such receiver's sale, knowing the plaintiff claimed to be the owner of said locomotives."

Thereafter Kann, a citizen of Pennsylvania, brought this action for conversion against defendant, a New York corporation, and the District Court, having found the value of the locomotives to be $4,500, but that defendant below was entitled to a credit of $500, ordered judgment for $4,000, with interest, in favor of Kann. While the record could be more helpful in clearness, we shall assume for the purposes of the case that the facts were such that a purchaser at foreclosure sale for value and without notice, actual or constructive, would take free of any claim of Kann, although, as between Attica Company and Kann, the latter, of course, was the owner of the engines.

Concededly no appropriate paper was filed in compliance with sections 61 and 62 of the Personal Property Law of New York (Consol. Laws, c. 41). But the findings of fact quoted supra hold that actual notice was given to the purchasers at the sale.

It does not appear, either in the findings or the testimony, that Knight et al. were mere formal purchasers as part of the machinery familiarly employed in reorganization foreclosure decrees to vest title ultimately in the real purchaser; nor does it appear that they were promoters to the knowledge of Kann, who would act as mere instruments or conduits of title. In short, the facts do not present questions similar in character to those considered in Davis Imp. Wrought Iron W. W. Co. v. Davis Wrought Iron W. Co. (C. C.) 20 Fed. 699.

It will be noted that the court found that Knight et al., not contemporaneously, but "thereupon or shortly thereafter," caused defendant corporation to be organized. Apparently there is no question as to this fact. Indeed, the solicitor for plaintiff in error so states in his brief, and trial counsel for defendant in error so stated without challenge at the trial, and the referee's deed under the foreclosure sale in effect so recites.

We are not concerned with any question as to how far notice to persons subsequently becoming incorporators or directors of a corporation binds such corporation. The uncontradicted testimony shows that prior to the sale Kann had numerous conferences with Knight, Hogue, and Conroy (Knight being also Kann's counsel), in which he stated to them that he "owned this equipment." They and their associates were the purchasers at the sale, and obviously there was no one

else to whom Kann could give actual notice, as defendant was not organized until after the sale.

[2] There seems to be no evidence of any actual notice to O'Dell and Eddy, but there is evidence from which it may be inferred that they with Knight, Hogue, and Conroy, were acting as a group and not individually, and the District Court, therefore, was justified in so finding when it referred to them as a syndicate. It is true that the referee's deed recites that the bidders were Knight, Conroy, O'Dell, Stanley, and Wilson, and does not recite Hogue and Eddy as bidders; but the court on this record could nevertheless find that those named by it were the real purchasers, even though (and as to this the record seems to be silent) for some reason, formal or otherwise, there were some others recited as bidders in the referee's deed.

[3] The questions, therefore, with which the District Court dealt, were questions of fact. Having found that actual notice was given to the purchasers, the subsequent acts of these purchasers cannot free any later purchasers or nominees of the notice given to the original purchasers.

[4] Only one other point needs mention. A letter from L. B. Foster Company to Kann was received in evidence. It was dated February 15, 1917, and embodied an offer in good faith to buy the engines for $5,000 under certain conditions. There was ample evidence on which to base the court's finding of a value of $4,500 at the time of the conversion and, therefore, we shall not pause to determine whether, on the facts in this case, the letter was admissible on the theory that there was no market value. It is enough to state that even if the letter should not have been received in evidence, the error was harmless.

Judgment affirmed.