### GEORGE A. FULLER CO. v. BROWN.

(Circuit Court of Appeals, Fourth Circuit. October 19, 1926.)

No. 2466.

**1. Appeal and error ⟷989.**

Motion for judgment, after jury trial is waived under Rev. St. § 649 (Comp. St. § 1587), corresponds to motion for directed verdict in jury trial, and exception to refusal presents only question whether there was substantial evidence.

**2. Trial ⟷382.**

In passing on defendant's motion for judgment after waiver of jury trial under Rev. St. § 649 (Comp. St. § 1587), evidence must be viewed in light most favorable to plaintiff.

**3. Master and servant ⟷72.**

Statement to employee at time of paying bonus that employer, at completion of ships then under construction, would pay additional bonus, *held* to be definite promise.

**4. Master and servant ☞72.**

Statement to employee at time of paying bonus that amount was approximately 50 per cent. of total to be paid on completion of ships then under construction, *held* not mere prophecy, but definite promise.

**5. Master and servant ☞72.**

Promise to employee that 50 per cent. balance of bonus would be paid on completion of vessels then under construction *held* not indefinite as to amount, although promise to increase bonus if profits were greater was too vague on which to base recovery.

**6. Master and servant ☞72.**

Condition in statement to employee at time of paying bonus that officers of company should be sole judge as to bonus *held* not authority for arbitrarily withholding payment thereafter.

**7. Master and servant ☞72.**

Where conditions imposed by employer for agreed bonus had been complied with by employee so far. as possible, it is immaterial if officers of employer company had not authorized payment.

**8. Master and servant ☞74.**

Under agreement to pay bonus to employee on completion of ships under construction, law implies promise to pay within reasonable time, where ships were never completed, but construction abandoned by employer.

**9. Appeal and error ☞989.**

Court has power, on exceptions to findings, to review evidence to determine whether it supports findings of fact.

**10. Courts ☞406(1).**

Every finding of fact having reasonable support in evidence, and tending to support judgment, is binding on Circuit Court of Appeals.

**11. Master and servant ☞80(9).**

Where agreement to pay bonus was conditioned on profit in construction of ships, finding requiring payment of agreed bonus cannot be sustained, in absence of evidence showing profit.

In Error to the District Court of the United States for the Eastern District of North Carolina, at Wilmington; Isaac M. Meekins, Judge.

Action by R. A. Brown against the George A. Fuller Company. Judgment for plaintiff, and defendant brings error. Affirmed. on condition that plaintiff file a remittitur; otherwise reversed and remanded for a new trial.

This was an action instituted by the defendant in error, R. A. Brown, hereinafter referred to as plaintiff, to recover of the plaintiff in error, the George A. Fuller Company, hereinafter referred to as defendant, the sum of $5,400, being the amount alleged to have been promised him by way of "bonus"

15 F. (2d)—43

or additional compensation from the profits to be derived from the construction and sale of certain vessels to be constructed by defendant at Wilmington, N. C. There was a written stipulation waiving a jury trial, and the trial court made special findings of fact, and adjudged thereon that plaintiff was entitled to recover of defendant the sum of $3,-000, being a "bonus" of $600 each on eight ships constructed and sold by defendant, on the first six of which one-half of the bonus, or $300 each, had already been paid. The assignments of error relate to the refusal of the court to enter judgment for defendant at the conclusion of the testimony, the sufficiency of the evidence to sustain the seventh and tenth findings of fact and certain facts contained in the fifth finding, and the sufficiency of the findings to sustain the judgment.

In the year 1920, plaintiff was employed by defendant as general storekeeper at a salary of $3.000 per year, In February of that year he was paid the sum of $300 as a "bonus" from the profits derived by defendant from the construction and sale of the ship Cranford. At the same time, the bonus system of the defendant was explained to him by an officer of the company, as contained in a written statement attached to his receipt for the $300, which was introduced in evidence as Exhibit "A–2," and is as follows:

"The cash in the inclosed envelope, for which you are asked to give your receipt, is paid you by the George A. Fuller Company as a bonus, and is a share of the profits on hull 1446 the Cranford.

"This amount is approximately 50 per cent. of the total amount to be paid you. The remaining 50 per cent. will be paid upon the completion of the twelve vessels now under construction, eight of which are being constructed for the United States Shipping Board, Emergency Fleet Corporation, and four for the George A. Fuller Company, subject to the following conditions:

"I. That you are still in the employ of the George A. Fuller Company at that time.

"II. That your services have been satisfactory to the company.

"III. That in the event of the termination of your employment prior to the completion of the twelve ships any interest you may have in any bonus is forfeited.

"IV. That the officers of the George A. Fuller Company shall be the sole judge as to what bonus, if any, shall be paid.

"The George A. Fuller Company expects to distribute a share of the profits on each of the succeeding hulls under the same condi-

tions and in the same amounts provided the profits earned warrant the same.

"Should the profits earned on the succeeding hulls exceed that earned on hull No. 1446, it is the intention that the amounts paid individuals participating in this distribution will also be increased such increases being held for distribution upon completion of the twelve vessels.

"This bonus is paid to you as a reward for the services you have rendered in the construction of the ship named, but it is understood that it is not a part of the compensation provided in your employment arrangements."

The facts as found by the judge, omitting the formal findings, are as follows:

"(4) In and during the years 1919 and 1920 defendant under a contract with United States' Shipping Board Emergency Fleet Corporation, engaged at Wilmington, N. C., in the building of certain ships at a yard known as 'Carolina Shipyard.' The contract mentioned in this paragraph was originally' for twelve ships. It was afterwards amended so as to provide for only eight ships.

"(5) During the latter part of the year of 1919 and the early part of the year of 1920 demand for shipyard employees was great, and labor conditions in the shipbuilding industry were acute. Wages paid to such employees were constantly increasing up to March, 1920. For the purpose of preventing further demands for increased wages, and as an inducement to plaintiff to remain in the employment of the defendant throughout the performance of its contract with the Emergency Fleet Corporation hereinbefore referred to, and because defendant thought plaintiff's services worth it, and on or about February 17, 1920, defendant made with plaintiff the agreement hereinafter set out in full to pay to him, in addition to the wages at the time being paid him, the sum of $600 upon each vessel thereafter to be constructed at its yard, at the time representing to plaintiff its purpose to construct for Emergency Fleet Corporation eight vessels and upon its own account four vessels, a copy of the said agreement so made being in words and figures as follows: [Here follows exhibit A–2, copied above.] At or about the time of the making of said agreement defendant, pursuant to said agreement, and in accordance with the terms thereof, paid to plaintiff in connection with hull No. 1446, being the first vessel constructed by it for Emergency Fleet Corporation, the sum of $300, and thereafter, from time to time, under and pursuant to said agreement, paid to plaintiff in con-

nection with the second, third, fourth, fifth, and sixth vessels constructed by it for Emergency Fleet Corporation the sum of $300 each.

"(6) Defendant built for Emergency Fleet Corporation at a profit the eight vessels mentioned and referred to in the memorandum or agreement hereinbefore mentioned.

"(7) At or about the time of the making of said agreement between plaintiff and defendant the defendant, for the purpose of inducing its employees, among others plaintiff, to remain in its employ, posted at conspicuous places in or about its said shipyard and maintained until said shipyard was finally closed notices or signs to the effect that defendant would positively build at said yard twelve vessels; by reason of the making of said agreement to pay to plaintiff in connection with each vessel constructed as hereinbefore referred to and by reason of the posting of notices in and about its yard hereinbefore referred to plaintiff declined other employment at larger salary than was being paid to him by defendant, after bringing such offer of employment at higher salary to defendant's attention, and continued in the employment of defendant until the work at said shipyard was closed and ended, and his services were satisfactory to defendant.

"(8) Plaintiff was in no wise responsible for the failure of defendant to construct at said yard twelve vessels as referred to in said agreement (Defendant's Exhibit A–2).

"(9) From the time of the making of said agreement (Defendant's Exhibit A–2) until the termination of plaintiff's employment by defendant when said shipyard was closed, defendant did not give to plaintiff any notice of any purpose on its part not to pay to plaintiff upon each vessel constructed at said yard the amount as provided in said agreement (Defendant's Exhibit A–2).

"(10) Each of the eight vessels built for Emergency Fleet Corporation other than hull No. 1446 were built at a profit commensurate with the profit on hull No. 1446. In addition to the eight vessels constructed for Emergency Fleet Corporation, defendant built for its own account at said yard two ships, which were built by defendant at a loss.

"The court being of the opinion upon the facts as hereinbefore found that plaintiff is entitled to recover of defendant and its surety upon the first, second, third, fourth, fifth, and sixth vessels constructed by defendant for Emergency Fleet Corporation a balance of $300 each, and is entitled to recover of defendant and its surety upon the seventh and

eighth vessels constructed for the Emergency Fleet Corporation the sum of $600 each."

George Rountree, of Wilmington, N. C. (Rountree & Carr, of Wilmington, N. C., on the brief), for plaintiff in error.

Robert Ruark, of Raleigh, N. C. (Ruark & Campbell, of Wilmington, N. C., and Ruark & Fletcher, of Raleigh, N. C., on the brief), for defendant in error.

Before WADDILL and PARKER, Circuit Judges, and COCHRAN, District Judge.

PARKER, Circuit Judge (after stating the facts as above). [1,2] Defendant's motion for judgment, at the conclusion of the evidence, was properly denied. Where a jury trial is waived pursuant to section 649 of the Revised Statutes (Comp. St. § 1587), such motion corresponds to a motion for a directed verdict in a trial before a jury; and the exception to the refusal of the motion presents only the question as to whether there was any substantial evidence before the court to sustain the allegations of the complaint. Societe Nouvelle d'Armement v. Barnaby (C. C. A. 9th) 246 F. 68, 158 C. C. A. 294. In passing upon such motion, as in passing upon a motion by defendant for a directed verdict, we must view the evidence in the light most favorable to plaintiff, and must draw therefrom all conclusions and inferences which can legitimately be drawn in plaintiff's favor.

The evidence establishes a promise by the defendant to pay to plaintiff as a "bonus" a share of the profits on each of the ships which it was engaged in building, conditioned upon plaintiff's remaining in the employment of defendant and rendering satisfactory services until the completion of all of the ships, and, as to the ships not completed at the time of the promise, that the profits realized upon them should justify the payment. It establishes that this promise of bonus was not of something vague and indefinite, but that a definite sum was paid plaintiff upon the completion of each of the first six ships, with the statement that this was approximately 50 per cent. of the bonus on that ship, and that the remaining 50 per cent. would be paid upon the completion of the twelve ships contemplated; that the bonus would be increased if the profits earned on succeeding ships should exceed the profits on the first; and that a similar amount would be distributed on succeeding ships if the profits earned should warrant same. It establishes that plaintiff relied upon the promises of defendant, and continued in its employment, rendering satisfactory service until the shipyard

was closed, and that, because of the promises made him, he declined employment elsewhere at an increased salary. And it establishes that the condition as to the making of profits was unquestionably fulfilled as to the second, third, fourth, fifth, and sixth ships, which were constructed at even greater profit than the first. In other words, the evidence shows a conditional offer on the part of plaintiff, acceptance on the part of defendant, a consideration, and a compliance with the conditions of the offer.

Defendant's position that there was no binding contract and consequently no liability on its part, rests upon three propositions: (1) That there was no definite promise to pay a bonus, but merely an indefinite statement of intention to give a gratuity, the carrying out of which was to depend upon the discretion of its own officers; (2) that, in any event, the bonus was not to be paid, except as authorized by the officers of defendant, and that they had not authorized the payment of same; and (3) that it was a condition of the payment of the bonus that the twelve ships should be completed, and that this condition had not been complied with. We shall consider these in order.

[3] As to the first proposition, we think that the statement made to plaintiff, and embodied in the paper attached to his receipt, was more than a mere expression of intention of giving a gratuity. When considered in connection with the surrounding circumstances, it was a definite promise that plaintiff should share in the profits realized from each of the ships. Defendant had a profitable contract with the government, but, on account of disorganized labor conditions, the realization of profit from the contract depended upon its ability to hold its organization together and to proceed with the work. It therefore made this offer to share profits, not only to plaintiff, but to various other persons who occupied positions in its organization, paying only half of the bonus to which they were entitled upon the completion of each of the ships, and holding back the other half, which it promised to pay upon the completion of the twelve which it represented that it intended to build. It is true that the paper attached to plaintiff's receipt contained the words, "This bonus is paid to you as a reward for the services you have rendered in the construction of the ship named, but it is understood that it is not a part of the compensation provided in your employment arrangements."

But, conceding to this language its full

effect, it does not mean that the amount paid, or promised plaintiff, was a gift without consideration, but, as expressly stated, was a "bonus," which "is not a gift or gratuity, but a sum paid for services, or upon a consideration in addition to or in excess of that which would ordinarily be given." Kenicott v. Wayne County, 16 Wall. 452, 471, 21 L. Ed. 319; Noel, Collector, v. Parrott, 15 F.(2d) 669 (C. C. A. 4th) decided June 8, 1926; Payne v. U. S., 50 App. D. C. 219, 269 F. 872; Roberts v. Mays Mills, 184 N. C. 406, 114 S. E. 532, 28 A. L. R. 338; Zuolanek v. Mfg. Co., 150 Wis. 517, 137 N. W. 769, 44 L. R. A. (N. S.) 1214, Ann. Cas. 1914A, 793.

The law applicable to such cases was well stated by the late Chief Justice Clark, of the Supreme Court of North Carolina, in the case of Roberts v. Mays Mills, supra, as follows:

"It has become a very general policy with large employers of labor to offer a bonus or additional compensation to employees who shall render continuous and efficient service for a specified period of time. This is not a gratuity or gift, but is an offer on the part of the employer, with whom the offer originates in order to procure efficient and faithful service and continuous employment, and when the employee enters upon the service upon that inducement it becomes a supplementary contract of which he cannot be deprived without sufficient cause."

In the case of H. S. Kerbaugh, Inc., v. Gray (C. C. A. 2d) 212 F. 716, 129 C. C. A. 326, having under consideration the validity of an agreement to pay a bonus to certain employees, in addition to the salary paid them, Judge Ward, speaking for the court, said:

"The objection mainly relied upon at the trial and here was that this promise of a bonus, if made, was nudum pactum because the plaintiff, being bound to do his best for his salary, gave nothing in the way of consideration to support the promise of a bonus. This would be true if the plaintiff were legally bound to continue in the employment of the defendant to the end of the season. But he was not, and could have quit work at any time. Martin v. New York Life Ins. Co., 148 N. Y. 117, 42 N. E. 416. Therefore the jury had a right to find that he continued in the employment after this promise of a bonus, relying upon it."

[4] It is said, however, that there was no promise to pay the "bonus," but a mere expression of hope or expectation on the part of defendant, mere "words of prophecy, encouragement, or bounty, holding out a hope, but not amounting to a covenant." But we do not so interpret them. When the first $300 was paid to plaintiff, he was told:

"This amount is approximately fifty per cent. of the total amount to be paid you. The remaining fifty per cent. *will be paid* upon the completion of the twelve vessels now under construction." (Italics ours.)

And this same definite statement was either expressly or impliedly made each time a bonus was paid plaintiff on the five succeeding ships, and each time the receipt of plaintiff for the bonus money paid him was attached to a paper containing the same statement. It is clear that this was not mere "prophecy" or "holding out a hope," but a definite promise. The conditions following the promise we shall discuss later on, but, so far as this language is concerned, there can be no doubt that it is a promise. Nor do we think that the language as to the bonus to be paid on the succeeding ships is mere language of hope or prophecy. It is true that the statement is that the defendant "expects" to distribute a share of the profits on each of the succeeding hulls, but this is followed by a qualifying statement which not only adds a condition, but gives definiteness, viz. "Under the same conditions and in the same amounts provided the profits earned warrant same."

And this was followed by the further statement that, if the profits on succeeding hulls should exceed that on the Cranford, the amount distributed as bonus would be increased. Certainly this was intended by defendant as a promise to pay a bonus on succeeding hulls, in the same amount and under like conditions as the bonus paid on the Cranford, if the profits earned equaled the profits on the Cranford, and was intended to be so understood and acted upon by plaintiff. The fact that the word "expects" was used instead of the word "promises" cannot change the matter. The law regards substance and not form, and it is perfectly clear that the language used was intended as an offer, and that it was accepted and acted upon as such.

What was said in the Zwolanek Case, supra, is applicable here. In that case it appeared that the defendant had passed a by-law which provided for the distribution of a share of the profits to be earned among employees who should have been in the service of the company continuously for a certain length of time. No promise was made to the plaintiff employee, but the by-law was called to his attention. It was argued that the by-law was not a contract with the employee,

but was made for the internal guidance and direction of the corporation. In passing upon this contention, the Supreme Court of Wisconsin said:

"To allow the employer in such a case to repudiate liability on the ground stated would come perilously near conniving at the perpetration of a fraud, and no court should say that in such a case the by-law merely affected the corporation and not third persons. * * * If corporations desire to have their so-called by-laws affect only the corporation and its shareholders, then they should refrain from exploiting them to third persons for the purpose of inducing such persons to act in reliance thereon."

[5] Nor do we think that the promise is indefinite as to the amount to be paid, or void on the ground that a condition of the writing reserves to the officers of defendant the right to determine whether the bonus shall be paid or not. When a portion of the bonus was paid plaintiff on the completion of each of the first six ships, it was agreed that this was approximately 50 per cent. of the bonus on that ship, and that the remaining 50 per cent. would be paid plaintiff later, upon the completion of the twelve ships. This was certainly definite enough. The promise to increase the bonus if the profits on succeeding ships should exceed the profits on the Cranford was too vague and indefinite to form the basis of the right of recovery as to such increase, but this would not defeat the right to recover that which was definitely promised.

[6] As to the condition "that the officers of the George A. Fuller Company shall be the sole judge as to what bonus, if any, shall be paid," we do not think that this can be construed as authorizing the defendant to arbitrarily withhold the payment of the remaining 50 per cent. of plaintiff's share of the bonus on the first six ships, which defendant agreed to pay to him upon the completion of the twelve ships which it proposed to build. To so construe it would, as counsel for defendant correctly argue, destroy the binding force of the contract; and certainly no construction should be adopted, if it is possible to avoid it, which would enable a party to thus "hold the promise to the ear and break it to the heart." We must construe the instrument as a whole and in the light of the surrounding circumstances, bearing in mind that it provided not only for the payment of the retained portion of the bonus on the ship which had been completed, but also for the payment of bonuses on succeeding ships, for the increase of the bonus if profits on succeeding ships should be greater, and for the forfeiture of the bonus if plaintiff's services should be unsatisfactory or if his employment should be terminated prior to the completion of the twelve ships. And, in the light of these circumstances, we are satisfied that the proper construction of the condition upon which defendant relies is that it reserves to the officers of defendant the right of determining whether plaintiff's services had been satisfactory, whether the right to bonus had been forfeited by termination of employment, and whether the bonus should be increased on account of increased profits, and not the right of arbitrarily withholding from plaintiff the payment of that which he had already earned and which had been expressly promised to him.

[7] As to defendant's second proposition, that the officers of defendant have not authorized the payment of the remainder of the bonus, the answer is that the conditions upon which the remainder of the bonus was to be paid to plaintiff have been complied with except in so far as defendant, by closing its yard and abandoning construction, has rendered it impossible to comply with same. Conceding that the contract vests in defendant's officers the right of determining whether plaintiff has complied with the conditions of his contract, they cannot defeat his right by mere inaction, or by withholding the bonus on account of losses which they may have sustained on other ships, when the conditions upon which he was entitled to the remainder of the bonus have admittedly been complied with. B. & O. R. Co. v. Brydon, 65 Md. 198, 3 A. 306, 9 A. 126, 57 Am. Rep. 318; 2 Williston on Contracts, par. 677.

[8] As to the proposition that the twelve ships were never completed, the answer is that the completion of the twelve ships was not a condition of the payment of the remainder of the bonus, but merely fixed the time at which it was to be paid. And it should be observed, also, that the payment of the remaining 50 per cent. of the bonus was not conditioned upon the realization of a profit on the twelve ships. On the contrary, the contract made upon the completion of the first ship provided for the distribution of a share of the profits on "each" of the succeeding ones, and as each of the first six were completed, a distribution of half of the bonus was made. There was no condition that any part of the half which was retained should be withheld if the twelve ships were not completed, or if loss was sustained upon any of them. As the remainder of the bonus was payable when the twelve ships should be completed, and as they were never completed,

but construction was abandoned after the completion of the tenth, the law implies a promise to pay within a reasonable time. 21 R. C. L. 11; Nunez v. Dautel, 19 Wall. 560, 22 L. Ed. 161. To hold that defendant could avoid payment by its own failure to complete the twelve ships, in the language of Mr. Justice Swayne in the case last cited, "would be a mockery of justice." And, even if the completion of the twelve ships be construed as a condition of the liability of defendant to pay the balance promised, the failure to complete them cannot avail the defendant, as defendant itself was responsible for the failure.

"It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." 2 Williston on Contracts, par. 677; U. S. v. Peck, 102 U. S. 64, 26 L. Ed. 46; Kelly v. Fahrney (C. C. A. 7th) 123 F. 280, 59 C. C. A. 298; Roberts v. Mays Mills, supra.

[9, 10] Coming next to the assignments of error, which challenge the sufficiency of the evidence to support the findings made by the judge, we note that a question was raised in the briefs as to the power of the court to review the evidence for the purpose of determining whether it supports the findings of fact, but we think that the court does have that power upon exception to the findings. Arcade v. A. R. Corporation (C. C. A. 2nd) 286 F. 809; U. S. v. Penn. & Lake Erie Dock Co. (C. C. A. 6th) 272 F. 839; Chicago Life Ins. Co. v. Tiernan (C. C. A. 8th) 263 F. 325; Humphreys v. Third National Bank (C. C. A. 6th) 75 F. 852, 21 C. C. A. 538. Every finding of fact, however, having reasonable support in the evidence and tending to support the judgment, is binding on this court. Va. & W. Va. Coal Co. v. Charles (C. C. A. 4th) 254 F. 379, 165 C. C. A. 599. We do not examine the evidence to see whether the trial court has rightly decided the questions of fact, but only to determine whether there is any competent evidence sufficient to support the findings. Societe Nouvelle d'Armement v. Barnaby (C. C. A. 9th) 246 F. 68; 158 C. C. A. 294.

[11] After a careful review of the evidence, we think that all the findings excepted to are supported by evidence, except the finding that each of the eight vessels built for the Emergency Fleet Corporation other than hull 1446 was built at a profit commensurate with the profit on hull 1446. The evidence establishes that the profits on the second, third, fourth, fifth, and sixth vessels were commensurate with the profits on hull 1446, but there is no showing whatever that this was true with respect to the profits on the seventh or eighth vessels. All that the evidence shows with respect to these vessels is that some profit was made on them. We must hold, therefore, that the tenth finding, in so far as it embraced the seventh and eighth vessels, was not supported by any sufficient evidence, and that the learned district judge erred in making the finding.

For the reasons given in discussing the defendant's motion for judgment, we think that the facts found support the judgment; and, as the only error relates to the finding as to the profits on the seventh and eighth ships, and the consequent inclusion in the judgment of the "bonus" on these two ships, amounting to $1,200, we shall follow the course taken by us in Mullins Lumber Co. v. Williamson & Brown Land & Lumber Co., 255 F. 645, 648, 167 C. C. A. 24, and Southern Gypsum Co. v. United Paperboard Co. (C. C. A.) 11 F.(2d) 58, and give plaintiff the option to remit this $1,200 from the judgment, rather than submit to a new trial. It follows that the judgment of the District Court will be reversed, and the cause remanded for a new trial, unless the plaintiff shall pay all the costs in this court, and shall remit in writing on the judgment in the District Court the sum of $1,200 and interest thereon from November 20, 1920; and that, if the plaintiff shall pay such costs and make such remittitur within 60 days, the judgment of the District Court stands as affirmed.

Reversed nisi.