**ARMAND CO., Inc., v. HUEGEL.**

No. 8953.

Circuit Court of Appeals, Eighth Circuit.

April 9, 1931.

Ralph T. Finley, of St. Louis, Mo. (James C. Jones, Lon O. Hocker, Frank H. Sullivan, and James C. Jones, Jr., all of St. Louis, Mo., on the brief), for appellant.

Harry S. Rooks, of St. Louis, Mo. (Edward W. Foristel, O. J. Mudd, James T. Blair, Oscar Habenicht, and Harvey B. Cox, all of St. Louis, Mo., on the brief), for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges.

KENYON, Circuit Judge.

This is an appeal from a judgment secured by appellee against appellant in an action in the United States District Court for the Eastern District of Missouri, brought to recover commissions on certain sales of merchandise. Appellant is a manufacturing company of Des Moines, Iowa, engaged in the manufacture and sale of toilet preparations. It employed a number of salesmen, of whom appellee was one, who sold on commission. Appellee's territory included St. Louis and adjacent territory in Missouri. It is the claim of appellee that about January 1, 1922, while in the employ of appellant, he entered into an additional contract whereby he was to receive 5 per cent. commission on all sales made by appellant to jobbers in appellee's territory, in consideration of appellee's calling on the retail trade and endeavoring to create a demand for the goods of appellant; that under said contract he entered upon the new work in addition to the old, and continued therein until May 1, 1926.

It was admitted at the trial that such jobbing business in appellee's territory for the year 1922 amounted to $54,036. The verdict returned was $2,700, which was substantially 5 per cent. on this sum. A large amount of

similar business was done in the other years up to 1926, and in his complaint appellee claimed a commission of 5 per cent. on all of said business, which would have amounted to a very large sum. We need not concern ourselves with that phase of the matter.

Appellant concedes that some arrangement was made at a certain meeting in the city of Des Moines in January, 1922, to permit salesmen to participate in the profits of the company by the allowance of some commission to such salesmen on sales made by the company to jobbers, and that this was additional to the commissions allowed on sales made by the salesmen direct to dealers in their territory, but claims that no particular commission was agreed upon; that such subject was for future consideration, and that in October, 1922, the salesmen at a convention in Des Moines were notified that it would be impossible to pay commissions on sales to jobbers, and each of them was given a check in liquidation of any obligation under said arrangement; that appellee received a check for $300 on October 31, 1922, in liquidation and full settlement of any obligation on account of commissions on sales by appellant to jobbers in appellee's territory.

At the close of the evidence appellant requested an instructed verdict in its favor, which was denied by the court. Appellant also requested the following instruction: "The Court instructs the jury that under no circumstances is the plaintiff entitled to recover jobber's commissions from the defendant after October 31, 1922." This was refused by the court.

The case was submitted to the jury, and verdict in the sum of $2,700 returned with interest, as before suggested.

There are a number of assignments of error, but we think it unnecessary to discuss questions arising under any of them except two, which present the alleged error of the court in refusing to instruct the jury that appellee could not recover any commissions on jobber's business after October 31, 1922, and the question of whether the verdict of the jury was supported by the evidence.

■ This action is on a claimed express contract. Appellant urges that the evidence is totally insufficient to show such contract. Appellee had been for some time engaged in the business of a traveling salesman for appellant. It is evident that some irritation was created in his mind because appellant was selling directly to the jobbers in his territory. Naturally this affected his business. The matter was brought up at the meeting in Des Moines in January, 1922, and the evidence of the sales manager, Mr. Gibson, confirms appellee's claim that there was some arrangement in regard to paying the salesmen commissions on sales made directly to jobbers by appellant. The question of just what was to be paid was a disputed question of fact. There was sufficient evidence for a jury to say that an agreement had been entered into, as claimed by appellee.

■ It is urged by appellant that no consideration existed for said contract; that appellee merely agreed to do what he was bound to do under his previous arrangement with appellant. The sales by appellant to jobbers in appellee's territory of course affected his business, and a contract to give him a commission on such sales in consideration of his working up the business of selling directly to jobbers was not a strange or unnatural contract, and, if he remained in the business, relying on such agreement, and proceeded to act thereunder, there was ample consideration for said contract. George A. Fuller Co. v. Brown (C. C. A.) 15 F.(2d) 672. The contract was for an indefinite time, and the work to be done thereunder was not the same as that to be done under the existing contract.

■ The record shows, we think conclusively, that any agreement for jobber's commissions that may have been made was terminated at the end of October, 1922. At that time it seems there was a meeting in Des Moines of some of the officers of the company and the salesmen, at which the salesmen were presented with bonus checks. Appellee received one for $300, which he says was a bonus for good work during the year 1922, but which appellant claims was in settlement of anything due him under any claim for commissions. Whether that is true or not was a question of fact, but, in any event, appellee was informed at that time by appellant that there would be no more commissions, and the evidence shows he so understood the situation. It is clear that after that time he did not expect commissions. Two letters are in evidence written by him after he left the company, one dated December 22, 1926, in which he brings up the question of commissions on jobbing business in Missouri for 1922. The other of January 12, 1927, written to Mr. Perry, attorney for appellant, refers to claim for commissions on jobbing business during 1922. There is no evidence that he ever requested any commissions during the four years after 1922 that he remained in the service of the company.

In our judgment the court should have

given the instruction limiting the recovery to commissions on business done prior to October 31, 1922. How does that situation leave the case?

██ The jury found the appellee entitled to 5 per cent. commission on jobber's sales for the full year 1922. Appellee argues that the evidence authorized such verdict. We do not think so. Appellee's counsel state in their brief that the jury could find that, after December 31, 1922, he had no further reason to expect and did not expect or rely on commissions thereafter on the jobbing business. The evidence shows that appellee could not expect any commissions after October 31, 1922. How could a jury under this evidence figure out the amount of business done with the jobbers by appellant between January 1, 1922, and October 31, 1922? It would be a mere guess and entirely speculative. Juries cannot wander into a field of this nature and return verdicts on mere guesses. The jury evidently found that the contract had been terminated some time in 1922, as it did not allow commissions for the other four years. There is nothing in the evidence to indicate what part of the verdict is based on commissions upon business done prior to October 31, 1922. Hence, under well-settled principles, the verdict cannot be sustained. As the verdict cannot stand for the reasons we have pointed out, and as the case must be remanded for further action, there is no use in considering other alleged errors suggested, as they may not occur upon a retrial.

The judgment is reversed, and the case is remanded for further proceedings in harmony with this opinion.

Reversed and remanded.