[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT
In this case the plaintiff was employed by the defendant as a "Territory Manager" — she sold medical devices and products. Pursuant to the contract of employment she entered into she would be paid a Five Thousand ($5,000.) Dollars quarterly commission bonus for sales made during the third quarter of 1993 if she made the requisite amount of sales during that quarter. There is no dispute that during the quarter she did make the necessary sales that would otherwise have qualified her for the bonus.
The plaintiff notified the defendant employer she was terminating her employment effective September 30, 1993, the end of the third quarter. At the time she was hired her contract of employment contained the following language:
 Employee's salary, bonus and benefits are as designated by Employer and as further set forth in Employer's written compensation policies.
She was given a written compensation policy which provides:
 To be eligible for the payment of your quarterly bonus, you must be an employee in good standing (currently employed, not under any disciplinary action or project upgrade) at the time the bonus is paid. We are currently paying that bonus 45 days after the end of the quarter.
The plaintiff left the job the last day of the third quarter, September 30; the last referenced language requires that to be eligible for the bonus you have to be an employee at the time the bonus is paid and the policy defines that time for payment as 45 days after the end of the quarter which here, as noted, was September 30. Under the terms of the compensation policy the bonus would have been paid here on or about November 15, 1993. The plaintiff was not an employee on that date and under the explicit terms of the employment contract was thus not entitled to the bonus if the contract were to be enforced according to its terms. CT Page 13146
When the plaintiff made demand for the bonus payment the plaintiff refused to pay it citing the agreed upon terms of employment. The plaintiff has now brought this action seeking her remedy under § 31-72 of the general statutes. She moves for summary judgment claiming there is no issue of material fact barring such relief.
The defendant has filed a cross motion for summary judgment claiming the plaintiff is not entitled to judgment since under the explicit terms of her contract of employment she was not entitled to the bonus. Both sides agree that this matter can be resolved as a question of law; there is no dispute as to any issue of fact which would be material to the resolution of the case.
The plaintiff does not claim the defendant failed to pay her ordinary wages for actual time worked through her last day of September 30, 1993 at her annual salary of $32,000. There is no claim that the payment of the bonus was purposely delayed until after the plaintiff left the job or that the bonus was never paid on any other date but the date of 45 days after the end of the quarter to other employees who were otherwise eligible for the bonus. The defendant does not claim the plaintiff didn't make the requisite sales that would have otherwise entitled her to the bonus.
The dispute between the parties is a narrow one.
The plaintiff does not deny that under the explicit terms of the employment contract and the quarterly bonus policy she would not be entitled to the bonus. She argues, however, that the bonus policy violates the terms of § 31-72 of the general statutes. Payment of wages is governed by § 31-71a et seq. of our statutes, and § 31-71a(3) defines "wages" to mean "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation. Section 31-71(c)(a) says that "whenever an employee voluntarily terminates his (sic) employment, the employer shall pay the employees wages in full not later than the next regular pay day, as designated under § 31-71(b), either through the regular payment channel's or by mail."
The plaintiff argues that this statutory provision means that CT Page 13147 an employer can't deny a terminated employee wages that have already been earned.
When the plaintiff was refused her bonus she brought this action under § 31-72 which says in relevant part:
 where any employer fails to pay an employee wages in accordance with the provision of § 31-71a
to § 31-71i, inclusive, . . . such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the Court, and any agreement between him and his employer for payment of wages other than as specified in said section shall be no defense to such action. . . . [emphasis added].
The plaintiff, providing the emphasis, argues that the quarterly bonus policy statement is just such an agreement "other than as specified" and therefore, cannot be relied upon as a defense to this action. Whatever the employer's motive may have been in agreeing to pay such a bonus, the bonus here was earned because of sales performance in the relevant quarter and the plaintiff otherwise fulfilled the quarterly requirement. In effect the plaintiff argues that the quarterly bonus policy, if enforced according to its terms would violate the public policy of our state as expressed in §§ 31-71a et seq and 31-72.
The settlement of the dispute between the parties requires an examination of the purposes behind the statutory scheme set forth in § 31-7(a) though § 31-71(i) and § 31-72 which seeks to enforce the statutory goals of the preceding sections. Our court in discussing § 31-72 says our statute:
 merely provides an enhanced remedy for the collection of wages. It does not embody substantive standards to determine the amount of wages that are payable but provides penalties in order to deter employers from deferring wage payments once they have accrued.
 Schortt v. New Milford Police Department, 212 Conn. 294, 309 (1989). CT Page 13148
The court noted a portion of the legislative history to the effect that the 1978 increase in penalties under § 31-72
reflected the legislature's view that "the payment of earnedwages is a basic gut level right", 212 Conn. at p. 309, fn. 13. (emphasis added by the court).
The statutory scheme is confusing in one respect. Section31-71(a)(3) defines wage very broadly to include "compensation for labor or services rendered by an employee. . . ." That would certainly seem to include within its definition quarterly or year end bonuses. Bonuses after all are not gifts or gratuities "but a sum paid for services or upon a consideration in addition to or in excess of that which would ordinarily be given, Fuller Co. v.Brown, 15 F.2d 672, 676 (CA 4, 1926), also see Cook v.Alexander, v. Alexander of Conn., 40 Conn. Sup. 246, 248 (1985). On the other hand § 31-71b provides that the employer "shall pay weekly all moneys due each employee on a regular pay day." If an employer wishes to pay wages less frequently than weekly it has to apply to the commissioner who can waive the weekly requirement "provided each employee affected shall be paid in full at least once in each calendar month on a regularly established schedule."
It could be argued that the statutory scheme, including §31-72 which provides a civil action for wage claims, didn't contemplate suits for unpaid bonuses which are paid traditionally quarterly and perhaps more commonly on a year end basis. When the legislature wanted to provide a § 31-72 action for benefits that are not of the type paid weekly they certainly knew how to do so, see Section 31-77k "Payment of fringe benefits upon termination of employment." Failure to pay contractually provided for bonuses would have to be asserted in an ordinary contract action by the former employee. cf Christensen v. BicCorporation, 18 Conn. App. 451 (1989), Corhiveau v. JenkinsBros., 144 Conn. 383, 387 (1957). Applying this analysis former employees would have a remedy to secure accrued bonuses, it just wouldn't be under § 31-72.
From a more merit orientated perspective there is another problem, at least for the court, with the plaintiff's theory of recovery. First it should be noted that there is no ambiguity in this contract provision so I cannot resort to the old rule that contractural language which is ambiguous must be interpreted against the drafter which would here be the defendant. The Supreme Court in Schortt said § 31-72 did not mean to confer CT Page 13149 substantive rights but only to provide penalties for failure to pay earned wages — that is "wage payments once they have accrued." How do we find when wages have accrued? I believe we have to look at the contract and the contract says here that the bonus (even if we accept that it is a wage) only accrues if the employee is an employee "at the time the bonus is paid." By her own choice the plaintiff was not an employee at that regularly occurring time. I take it parties to a contract can agree to contract provisions they believe are to their own benefit. This is not a case where there was a simple agreement to pay a bonus if certain conditions were met and the bonus wasn't paid Fullerv. Brown, supra. Nor is this a case even where the employee was discharged to avoid the payment of a bonus that would otherwise have accrued, Cook v. Alexander Alexander of Conn., supra. Nor can a credible argument be made that by requiring that a person would be entitled to the bonus if he or she was an employee at the time of its regular distribution the employer sought to make the right to a bonus illusory or was motivated by a desire to avoid the requirements of § 31-72. Bonuses are utilized to give productive employees an incentive to keep up the good work and thus to encourage them to stay on with a company. The purpose of the particular provision in this contract was to encourage such employees to give sufficient notice of their departure so that they could be replaced or the effects of their departure accommodated and perhaps to afford the employer some lead time to allow the employer to try to dissuade such productive employees from following through with their intention to leave. In other words such people would be aware from the explicit provisions of their contract of employment and its bonus policy that if they left before the end of the quarter, right at the end or within 45 days after the end, they wouldn't receive what might be a substantial bonus. In a situation where the worker is clearly advised of such contract provisions at the commencement of employment, where the provisions are easy to understand and in fact were understood, I don't believe the state's public policy as expressed in § 31-72 is violated by such contract provisions.
That the provisions here were a classic bonus arrangement to encourage excellent employees to stay on is underlined by the other proviso to the bonus policy which provided that to receive the bonus the employee, had to be an employee in "good standing". We are not dealing here with a bonus policy whose date of accrual was meant to be defined by the mere sales increase record over the last quarter. CT Page 13150
Also we don't have what perhaps might be a more difficult case — let's assume that workers in this industry or in similarly situated industries received substantially more than the regularly weekly earnings the plaintiff here received. Then a case could arise where the employer was using the bonus policy not to reward exceptional workers but to defer payment of wages that by all right should have been paid.
In any event on the facts before me I will deny the plaintiff's motion for summary judgment and grant the defendant's motion for summary judgment.
Thomas Corradino, Judge