JORDAN *v.* WALKER.

1. SALES—CONTRACT—EVIDENCE—SUFFICIENCY.
   In an action of assumpsit for breach of a contract for the sale of certain pickles, evidence consisting of correspondence of the parties examined, and *held*, not to show sufficient certainty as to quantity and quality to constitute a contract.

2. SAME—OFFER AND ACCEPTANCE—CONDITIONAL ACCEPTANCE.
   An acceptance is not rendered conditional by a statement therein of a proposed method of measurement corresponding to the trade manner which would be understood by both parties as the proper method, whether stated or not.

3. APPEAL AND ERROR—REVERSAL—RELIEF GRANTED—JUDGMENT ON SET-OFF.
   Where the issues in an action of assumpsit for breach of contract were submitted to a jury with instructions to allow the amount of a set-off pleaded by defendant, and a judgment was rendered for plaintiff, to review which defendant brought error, plaintiff not appealing, the court, on reversing the judgment without granting a new trial, entered judgment for defendant for the amount of his set-off.

Error to Kent; Perkins, J. Submitted June 15, 1908. (Docket No. 96.) Decided October 5, 1908.

Assumpsit by John J. Jordan, William M. Jordan, and Frank E. Jordan, copartners as Jordan Bros. Co., against George E. Walker for breach of contract for the sale of certain pickles. There was judgment for plaintiffs, and defendant brings error. Reversed, and judgment upon his set-off entered for defendant.

*McDonald & Powers* (*M. A. Nichols*, of counsel), for appellant.

*D. O. French* and *James A. Lombard*, for appellees.

OSTRANDER, J. The court below ruled that a valid

written contract existed between the parties for the sale by the defendant to the plaintiffs of two tanks of pickles, the same to be the first tanks packed by the defendant in the season of 1907. If there was such a contract, it is to be found in correspondence of the parties here set out. It should be stated that the business of plaintiffs is purchasing pickles from those who salt or cure them, and, after subjecting them to further treatment, selling them to the trade. Defendant is owner of a salting station, and he buys cucumbers from the growers, salts and sells them. Plaintiffs had previously purchased pickles of defendant. There had been oral negotiations between them with respect to the purchase by plaintiffs of the 1907 crop, followed by some correspondence not here material. A letter written by the plaintiffs to the defendant, dated June 20, 1907, contains the following:

"If you will let us have 3,000 bushels, vat-run, counting 5,000 to the bushel, at $1.00 per bushel, we to furnish casks, it will help us out some."

The reply, dated June 27th, reads:

"I will place your order for two tanks of vat-run to be taken out early in the fall when cured at the $1. This was what I figured on letting you have the time I called at your office. Barrels you furnish and price f. o. b. factory.
"P. S. I will give you the first two tanks filled."

The answer to this was:

"Your letter received stating that you would let us have two tanks of vat-run at $1.00 per bushel, f. o. b. W. Carlisle six bushel to 45-gal. cask, we to furnish casks. We presume this is about two thousand bushel you will let us have, as we judge your tanks will hold about one thousand bushel each. Is it possible for you to enter our order for another thousand bushel? We would like to have another thousand bushel bought to protect us on sales."

To the last letter defendant made no reply. Whether

all three or only the last two of these letters are considered, it is contended there is an offer on the part of defendant to sell two tanks of pickles, the first ones filled, vat-run, at $1 a bushel, barrels to be furnished by plaintiffs, price f. o. b. at plaintiffs' station. The expression in the last letter "six bushel to 45-gal. cask" is not, under the testimony, a modification of the proposal, or a condition attached to its acceptance. It is the statement of the trade manner of measuring quantities, understood by both parties, whether stated or not. Defendant testified that "45 gallons is considered by all packers as six bushels." See 1 Beach on Modern Law of Contracts, § 56. We are impressed, however, that the quantity of pickles and their quality, so far as dependent upon the size of the pickles, was, and was understood to be, matter for further negotiation. Pickle tanks are not uniform in size, nor is there a recognized minimum or maximum size, and "vat-run" may mean pickles counting all the way from 3,000 to 6,000 pickles to the barrel. Defendant had no tanks holding 1,000 bushels or near that quantity. Plaintiffs had seen his tanks. One of the plaintiffs testified upon the subject of "vat-run" as follows:

"*Q.* Now, I want to ask you, Mr. Jordan, whether or not the price for vat-run pickles would be higher as the number of pickles to the cask is increased?

"*A.* Yes, sir; a cask of pickles, running from 5,000 to 6,000 to the cask, would be worth more than pickles running from 4,200 to 4,400 count. On vat-run pickles that will count between 5,000 and 6,000, they are worth about 10 cents a bushel more than pickles that will count 4,000 to 4,500."

So in various market quotations, introduced by plaintiffs to establish the amount of their damages, it appears that quotations are, for the most part, made with specifications as to the count. For example:

"Chicago, August 10, 1907; 500 casks vat-run 3,200 to 3,500 counts at $7.50 per 45 gallon, without barrels, or $1.25 per bushel, f. o. b. Ind.

"Chicago, August 17, 1907; vat-run pickles 3,000 to

4,000 bushels; 4,000 to 4,500 count, f. o. b. Ind., per bushel, $1.50."

It is to be noticed that in the letter of June 20th plaintiffs specify a 5,000 count. Defendant's offer does not specify, nor does the reply thereto specify. And as to the quantity of pickles sold, the difficulty of finding an agreement in the letters themselves is illustrated by the testimony given by plaintiffs:

"*Q.* Were you not claiming that Mr. Walker had agreed to furnish you 2,000 bushels of pickles in the months of August, September, and October for the reason that pickles had gone up?

"*A.* I had expected all the time that I was to get the 2,000 bushels. I expected 2,000 bushels because he said he would give us two tanks, and I meant 1,000 bushel to the tank. I mentioned it in my letter of June 28th. He did not tell me anything about what his tanks would hold in his letter of June 27th. He did not contradict my statement that the tanks would hold 1,000 bushels each until his letter of August 13th, when he said one tank would hold about 40 bushel, and the other 440. At that time pickles had gone clear up."

Again:

"*Q.* Then, in order that you might actually know what you were getting, he could [should] have answered your letter?

"*A.* He should have done so to make it clear; but, as he did not say anything, we presumed he meant 1,000 bushels in a tank. He did not deny it. Choice vat-run pickles are nice and straight, and a fair count to the bushel; 5,000 or 6,000 count is a nice count to the barrel. Vat-run are quoted 4,500 to the barrel, and from 5,000 to 6,000 to the barrel. Five to six thousand is a nice vat-run. Ordinarily the run is about 4,500. I have seen 6,000 count for pickles four inches long and over in them. It depends on how many small pickles are in the barrel. You could have nearly all four-inch pickles if there was enough midgets in them to make a 6,000 count to the barrel, but I do not think that would be called a vat-run. Some three to four thousand is a coarse vat-run. I do not care to buy them. Forty-five hundred to the barrel is a fair run."

We think we are not warranted in saying that a mutual agreement existed. We have not overlooked the fact that later in the season defendant, in one of his letters, stated that the first two tanks of pickles held 40 bushels and 420 bushels, respectively, and that still later he wrote, " I do not hold myself holding." Nor have we overlooked the line of decisions of which *Indianapolis Cabinet Co.* v. *Herrman,* 7 Ind. App. 462, is one, in which case it is held that a contract for the sale of a certain number of carloads of lumber, at a fixed price per thousand feet, is not void for uncertainty because not specifying the quantity to be contained in a carload; it appearing there was a minimum and a maximum carload, depending upon the size of the cars. See, also, *Holland* v. *Rea,* 48 Mich. 218; *Hickey* v. *O'Brien,* 123 Mich. 611 (49 L. R. A. 594); *Miller* v. *Tanners' Supply Co.,* 150 Mich. 292. The subsequent statements of defendant do not aid in a construction of the language in which the contract, if it exists, is to be found, and the difficulty with respect to certainty of quantity and quality is not removed by language which indicates want of mutual understanding upon these most material subjects. The case, casually examined, may appear to be a close one; but careful examination has forced the conclusion that in finding that a contract existed the court below was in error. The judgment is reversed, with costs of both courts, and no new trial of this issue will be granted.

Plaintiffs owed defendant September 6, 1907, a balance, growing out of other transactions, of $494, which has not been paid. Defendant, with his plea, gave notice of set-off, contending at the trial that a verdict for this sum should be directed in his favor. The court instructed the jury to allow this sum to defendant in any verdict they might render, with interest at the rate of 5 per cent. It must be assumed that this direction was followed, being, in effect, a verdict of the jury in favor of defendant for this sum. The right to set off the demand of defendant in an action upon a special agreement to recover unliqui-

dated damages is not discussed in the briefs.   See 3 Comp. Laws, § 10075;  *Holland* v. *Rea,* 48 Mich. 218, 225. Plaintiffs have not appealed.

Under these circumstances, in reversing the judgment in favor of the plaintiffs, we enter a judgment in this court in favor of the defendant for the sum of $494, with interest at 5 per cent. from September 6, 1907.

MONTGOMERY, HOOKER, MOORE, and MCALVAY, JJ., concurred.