## SHEA v. SECOND NAT. BANK OF WASHINGTON.

### No. 8234.

United States Court of Appeals for the District of Columbia.

Decided Nov. 30, 1942.

Mr. John J. Wilson, of Washington, D. C., with whom Mr. Roger J. Whiteford, of Washington, D. C., was on the brief, for appellant.

Mr. D. C. Colladay, of Washington, D. C., with whom Mr. E. F. Colladay, of Washington, D. C., was on the brief, for appellee.

Before MILLER, VINSON, and EDGERTON, Associate Justices.

MILLER, Associate Justice.

A lease from John J. Bowles to Eugene E. Sykes, conveying property at 1701 Kalorama Road, N. W., in Washington, D. C., contained the following provision: "It is also understood and agreed that the party of the second part shall have the first refusal to purchase the property, provided he exercises said privilege to do so within three days after the receipt of notice from the party of the first part stating that a bona fide offer to purchase property has been made by another source acceptable to the party of the first part." On July 26, 1941, appellee, as successor in interest to Bowles, delivered to Sykes, a letter, dated July 23, 1941, which contained the following notice: "Accordingly, you are hereby notified that a bona fide offer to purchase said property has been made by another source acceptable to the undersigned as party of the first part. The amount of said offer is $121,250.00, all cash at the date of conveyance, which is to be made within 30 days from the date of acceptance of the offer or as soon thereafter as a report on the title can be secured if promptly ordered. A deposit of $5,000.00 has been received by the undersigned with the said offer and a similar deposit will be required by you to accompany your acceptance, if you decide to exercise your 'first refusal to purchase the property' at said price and on said terms. As stated in the quoted provision of the lease, you must exercise your privilege,

if at all, within three days after the receipt of this notice." On July 29, 1941, Sykes delivered to appellee a letter, dated July 28, 1941, containing the following language: "I, the undersigned, hereby give notice to the Second National Bank, Trustee under the Will of the late J. J. Bowles, that I elect to exercise my right of first refusal contained in an agreement of lease dated the 30th day of October, 1937, and made between said J. J. Bowles, deceased, as party of the first part, and myself as party of the second part, and purchase the premises demised to me by said lease agreement. Herewith is deposit of Five Thousand Dollars ($5,000.00) in form of a cashier's check of the Hamilton National Bank, Washington, D. C. Out of the purchase price, a commission in the amount of Three Thousand Seven Hundred Thirty-seven Dollars and Fifty Cents ($3,737.50) shall be payable to the real estate office of J. Dallas Grady and Son, in which John D. Mattingly is a salesman." It is agreed that the letter of July 28th was a timely response to the letter of July 23d, within the three-day requirement of the option clause in the lease. But appellee denies that it constituted an effective exercise of the privilege of first refusal.

Other negotiations and communications which took place thereafter between the parties failed to bring them together. Appellant, who claims as successor in interest to Sykes, then brought this action for specific performance. The trial court concluded that Sykes had failed to exercise his privilege of first refusal and gave summary judgment for appellee on the ground that there was no genuine issue as to any material fact.

Appellant stands upon Sykes' letter of July 28, 1941. He contends that this constituted an acceptance of the offer contained in appellee's letter of July 23d and "made a contract between the parties which, from a pure legal standpoint neither required nor expected supplement or complement." Appellee answers that appellant's acceptance was conditional, because of its requirement that a full commission be paid to J. Dallas Grady and Son, hence that it was ineffective to consummate a contract. To this appellant replies that assuming the acceptance to have been conditional, nevertheless, it imposed no burden upon appellee which did not already exist; hence it constituted a condition which would be implied by law; consequently "is mere surplusage and in the circumstances may be treated as though it had not been written."

The general rule is that an acceptance is not inoperative as such merely because it imposes a condition, if the requirement of the condition would be implied from the offer, though not expressed therein.[1] As Williston points out, such a condition is sometimes inserted from abundance of caution. If it expresses, merely, what would be implied, in fact[2] or in law,[3] from the offer, then it constitutes no qualification of the acceptor's assent. Some of the cases which seem to take a contrary position can be reconciled by careful analysis. Thus, in Phoenix Iron & Steel

---

[1] Restatement, Contracts (1932) § 60, comment *a*, illustration 2; I Williston, Contracts (rev. ed. 1936) § 78; Note, 1 A.L.R. 1508; Morse v. Tillotson & Wolcott Co., 2 Cir., 253 F. 340, 348, 1 A.L.R. 1485.

[2] Jordan Bros. Co. v. Walker, 154 Mich. 394, 396, 117 N.W. 942, 943 (accepted trade usages); Brown v. Norton, 50 Hun, N.Y., 248, 251, 2 N.Y.S. 869, 870 (business practices). See A. B. Small Co. v. American Sugar Refining Co., 267 U.S. 233, 235, 236, 45 S.Ct. 295, 69 L.Ed. 589; American Sugar Refining Co. v. Newnan Grocery Co., 5 Cir., 284 F. 835; Milliken-Tomlinson Co. v. American Sugar Refining Co., 1 Cir., 9 F.2d 809; Gilmer Bros. Co., Inc. v. Wilder Mercantile Co., 205 Ala. 650, 88 So. 854; Duggan v. Matthew Cummings Co., 277 Mass. 445, 178 N.E. 825.

[3] Morse v. Tillotson & Wolcott Co., 2 Cir., 253 F. 340, 1 A.L.R. 1485 (subject to the approval of title by counsel); Harris v. Bills, 203 Iowa 1034, 1038, 213 N.W. 929, 931 (free of encumbrance); Grimsrud Shoe Co. v. Jackson, 22 S.D. 114, 124, 115 N.W. 656, 658 (provided we receive the remittance at once); Curtis Land & Loan Co. v. Interior Land Co., 137 Wis. 341, 347, 118 N.W. 853, 855, 129 Am.St.Rep. 1068 (take care of delinquent taxes); Humphry v. Farmers' Union & Milling Co., 47 Cal.App. 211, 213, 190 P. 489, 490 (subject to permission for inspection on arrival); Magna Oil & Refining Co. v. Parkville Oil Corp., 96 Okl. 157, 221 P. 65 (shipment to be made in insulated cars as required by I. C. C. tariff rules); Bennett v. Cummings, 73 Kan. 647, 653, 85 P. 755, 757 (reserving right to insist upon honest weight); Carlsen v. Hay, 69 Colo. 485, 195 P. 103; Ryder v. Johnston, 153 Ala. 482, 45 So. 181.

Company v. Wilkoff Company,[4] the condition imposed required a *further agreement* upon a point which, if nothing had been said about it, would have been implied as a matter of law.

The cases relied upon by appellee,[5] do not even discuss the question whether the inclusion, in an acceptance, of a condition implicit in the offer, invalidates the acceptance. Instead, they are cases in each of which, except one, the reply attempted to vary the terms of the offer and hence, at best, constituted merely a counteroffer. In the other case, that of Strong v. Moore, the court assumed, for the purpose of its decision, that the acceptance was complete; and impliedly recognized that, as a matter of law, an acceptance may properly impose a condition implied in the offer.[6] In another Oregon case, the Supreme Court of that State expressly adopted the rule as stated by Williston.[7] Except for suggestive dicta, the question is one which has not been decided for the District of Columbia,[8] but we see no reason why the rule as generally applied should not be effective here.

Appellee contends that if the Grady firm had a right to recover a commission, in event of purchase by Sykes, it was a right against appellee; hence no concern of Sykes or appellant; consequently, that inclusion of the requirement in the acceptance should invalidate the acceptance. But this contention misses the point. Ordinarily, no doubt, if a buyer inserted qualifying language in an acceptance it would relate to his own interests. But in the application of the rule of law with which we are now concerned, it makes no difference to whom the obligation is owed. If the offeror is bound to perform it, then the inclusion, in the acceptance, of a requirement that he do perform it, is surplusage so far as concerns completeness of the acceptance. An example of this kind is found in a Missouri case,[9] where the acceptor specified that the present occupants of the property should be given a reasonable time to vacate.

Was the requirement that a commission in the amount of $3,737.50 should be payable to the Grady firm, one which was implied, in fact or law, from the offer as it was made by appellee to Sykes? The trial court found, and it is not disputed: "The regular rate of commission fixed by the Washington Real Estate Board upon this sale involving a purchase price of $121,250 is $3,737.50." This court has on a number of occasions upheld brokers' contracts for the payment of such commissions.[10] If no more were involved here, we would have no difficulty in saying that the requirement imposed by Sykes was implied in the offer.

But an additional problem arises from the following facts: (1) Prior to the date of appellee's letter to Sykes, it had granted to the Grady firm the exclusive right to offer 'and advertise the Kalorama Road property for sale, for a period of sixty days from June 4, 1941, and submit any offer or offers obtained. (2) Within this sixty-day period, namely on July 21, 1941, the offer to which appellee referred in its

[4] 6 Cir., 253 F. 165, 167, 1 A.L.R. 1497. See I Williston, Contracts (Rev. Ed. 1936) § 78, n. 6. Cf. Dickey v. Hurd, 1 Cir., 33 F.2d 415, 419, cert. denied, 280 U.S. 601, 50 S.Ct. 82, 74 L.Ed. 646 (subject to examination of titles by my attorneys and survey of property to show acreage you claim); Corcoran v. White, 117 Ill. 118, 120, 7 N.E. 525, 526, 57 Am. Rep. 858 (provided the title is *perfect*; in contrast to *marketable* title, which is implied by law); Coffin v. Portland, C.C.D.Ind., 43 F. 411.

[5] Beaumont v. Prieto, 249 U.S. 554, 555, 39 S.Ct. 383, 63 L.Ed. 770; Minneapolis & St. Louis Ry. v. Columbus Rolling Mill Co., 119 U.S. 149, 152, 7 S.Ct. 168, 30 L.Ed. 376; Potts v. Whitehead, 23 N.J.Eq. 512, 514; Iselin v. United States, 271 U.S. 136, 139, 46 S.Ct. 458, 70 L. Ed. 872.

[6] Strong v. Moore, 105 Or. 12, 22, 207 P. 179, 182, 23 A.L.R. 1217: "Whether or not the tenders relied upon by the plaintiffs constitute such an acceptance as is required by the law depends upon whether the plaintiffs are entitled to an accounting of the insurance money."

[7] C. R. Shaw Wholesale Co. v. Hackbarth, 102 Or. 80, 96, 201 P. 1066, 1067.

[8] Cf. Carver v. Hall, 3 App.D.C. 170, 176, 177: "An acceptance, however, is not made conditional by an addition or qualification which is wholly immaterial, nor by the existence of a misunderstanding between the parties as to the construction of any mere collateral terms not part of the agreement itself."

[9] Cavender v. Waddingham, 5 Mo.App. 457, 464.

[10] DuPerow v. Groomes, 42 App.D.C. 287; Bryan v. Abert, 3 App.D.C. 180, 181; Sechrist v. Atkinson, 31 App.D.C. 1, 4; Evans v. Shinn, 40 App.D.C. 557; Goldsmith v. Buckey, 62 App.D.C. 61, 64 F.2d 559. See Giovannoni v. Waple & James, Inc., 70 App.D.C. 229, 105 F. 2d 108.

letter to Sykes was presented to appellee by the H. L. Rust Company. This offer, which was made on behalf of Thomas G. Slater, contained the provision that the commission should be divided equally between the Rust Company and the Grady firm. (3) Upon receipt of the Slater offer appellee notified Rust that the provision for divided commission on the sale was in conflict with the exclusive right which had been given to Grady; Rust then invited return of the offer; whereupon appellee notified Grady of the situation, and on July 23, 1941, that firm authorized in writing, under its exclusive agreement, the acceptance of the Slater offer and payment of the sales commission in accordance therewith. (4) On July 23, 1941, the bank notified Rust that the Slater offer was accepted subject to Sykes' privilege of first refusal; (5) at the time of his acceptance on July 29, 1941, Sykes had been informed that Grady had the exclusive agency for sale of the property. (6) But he was not informed of Grady's agreement to split the sales commission with Rust until July 31, 1941, two days after the date of his acceptance. Consequently, so far as Sykes knew when he sent his letter of acceptance on July 29th, Grady's exclusive agency was in full force and effect, without limitation or qualification of any kind. However, it is not what Sykes understood, but the situation as it actually existed, in fact, on July 29, 1941, and the legal implications arising therefrom, which will conclude the rights of the parties.

■ Specifically, the important question is what, if anything, was Grady entitled to receive as a sales commission, upon a purchase by Sykes, resulting from the latter's exercise of his option. If, in such an event, the former was entitled to receive the full commission, then Sykes' insertion of the condition into his acceptance, added nothing beyond what was implicit in the offer, and the acceptance was good; if, on the other hand, Grady was entitled to only one-half, or any other amount less than the whole, then there was no acceptance. But before this question can be answered, several issues of fact and of law must first be determined. Who procured Sykes as a buyer? Was it Rust, by negotiating the original lease agreement between Bowles and Sykes?[11] Was it appellee, by tendering the offer pursuant to the option agreement in the lease?[12] Was it Grady, who—by pointing out to Sykes the possibility of gain through immediate resale to appellant—persuaded Sykes to exercise the option, which otherwise he would not have done; and in this event was it Sykes or appellant who was actually procured as the buyer?[13] Was it Rust, who by procuring Slater as a buyer set in motion the exercise of the option by Sykes? Or was the exercise of the option an event so automatic in character as to require a finding that no one procured a buyer? Further to complicate the problem, there are two written instruments to be considered, the broker's contract between appellee and the Grady firm and the waiver executed by that firm concerning the Slater offer. The former is variously referred to in the record. In appellant's complaint, in Sykes' answer, and in appellee's answer, it is described as an exclusive *agency for sale.* On the other hand, the affidavit of John A. Reilly, filed in support of appellee's motion to dismiss, described it as "the exclusive *right* to *offer* and *advertise* for sale * * * and *submit any offer* or offers obtained." (Italics supplied.) The trial court followed

---

[11] See Taylor v. Maddux, Marshall & Co., Inc., 55 App.D.C. 254, 4 F.2d 447 (broker not entitled to commission on sale of realty consummated through competing broker, though he first found the purchaser).

[12] Cf. Campbell v. Rawlings, 52 App.D.C. 37, 280 F. 1011, where a broker employed to sell was held entitled to commission when the option to buy was exercised by a lessee whom he procured. A distinction between the Rust situation and the Campbell case is the possible fact that Rust had not been employed to sell at the time the lease was signed, but this is immaterial in determining who was the procuring cause.

[13] The court made the following closely related finding: "After delivery of the notice to said Sykes as aforementioned John D. Mattingly, a salesman in the office of J. Dallas Grady & Son, approached James McD. Shea, plaintiff herein, with whom he had previously negotiated in an effort to sell this property to Shea, and proposed to him that defendant Sykes might be interested for a consideration in the exercise of his privilege of 'first refusal' under the above mentioned portion of the lease of the property; and after negotiations said Sykes and said plaintiff set forth the results thereof in two written contracts each dated July 28, 1941. Copies of said agreements are made part hereof by reference."

the language of this affidavit in its findings. If we may judge from the conduct of the parties[14] when Rust brought Slater's offer to appellee, they all, apparently, recognized that the Grady firm was entitled to receive a commission, not only on a sale consummated by its own efforts, but on a sale which resulted from an offer produced by another broker. Was the Grady firm entitled to recover the commission also in case of a sale to a buyer, procured by the seller himself, or to a lessee who acted under an option in his lease? It is well settled that an exclusive agent to sell is not entitled to a commission on a sale made by the owner unaided,[15] in the absence of an agreement to the contrary.[16] Was there an agreement to the contrary in the present case? Was the Grady firm given merely an exclusive agency or was it an exclusive right, which would entitle it to receive a commission, in the event of purchase by anyone, including the lessee, on a sale made by anyone, including appellee?[17] Appellee could, lawfully, have made such an agreement with the Grady firm;[18] but whether it did so we do not know. The agreement was not made a part of the record; the findings of the trial court did not cover these questions; there is not even anything to indicate that the trial court saw the agreement which created either an exclusive agency or an exclusive right. Obviously, there is no basis upon which this court can answer any of the questions set out above or determine what, if anything, the Grady firm was entitled to receive.

Turning our attention now to the waiver by the Grady firm, which authorized acceptance of the Slater offer and division of the commission, several questions arise: Did the waiver also authorize acceptance by Sykes of an offer from appellee? Did it authorize Sykes to exercise his option, or was the transaction between appellee and Sykes entirely outside the terms of the waiver? If these matters were within the terms of the exclusive agency or affected by the exclusive right, or by the waiver, is there any reason to assume that Grady's waiver also contemplated a division of the commission with Rust in case Sykes acted upon his option? In opposition to appellee's motion for summary judgment appellant filed an affidavit of Dallas W. Grady, in which he said, in part: " * * * that said firm did agree to take a one-half commission upon a certain contract tendered to said Bank-Trustee by one Thomas G. Slater * * * but said firm did not agree to take less than the full real estate commission in connection with the transaction in which the defendant Sykes exercised his privilege of 'first refusal' * * *." Appellee seeks to minimize the effect of this affidavit by challenging the timeliness of its filing; but it is significant in this respect that, in its own answer and counterclaim, appellee alleged that Grady claims the full commission on the sale if the Sykes purchase should be upheld; that Rust claims one-half the commission if the Sykes purchase is upheld; and, upon the basis of these conflicting claims, appellee prayed that Rust, Grady and Slater be required to interplead and that the court determine the respective rights of each.

On this appeal, appellee assumes, apparently, that both the brokerage contract and the waiver affected, and were intended to affect, a purchase by Sykes under his option. In its brief it contends: "When the Grady firm authorized acceptance of the Slater offer and payment of sales commission in accordance therewith, knowing of the option rights of Sykes, it necessarily assented to a sale whether to Slater or to

[14] III Williston, Contracts (Rev. Ed. 1936) § 623; Restatement, Contracts (1932) § 235(e); Ellery v. Washington Loan & Trust Co., 72 App.D.C. 293, 298, 113 F.2d 525, 530.

[15] Wozniak v. Siegle, 226 Ill.App. 619, 622: " * * * 'either through Wozniak [the broker] or any other person' * * *." (Italics supplied); Faith v. Meisetschlager, 45 Cal.App. 7, 187 P. 61; Davis v. Van Tassel, Sup., 107 N.Y.S. 910; O'Neal v. Southland Lumber Co., 168 La. 235, 121 So. 755; Auerbach v. Internationale Wolfram Lampen Aktien Gesellschaft, C. C.S.D.N.Y., 177 F. 458.

[16] Des Rivieres v. Sullivan, 247 Mass. 443, 142 N.E. 111; Hayes v. Clark, 95 Conn. 510, 517, 111 A. 781, 784; Stevenson Co. v. Oppenheimer, 91 N.J.L. 479, 104 A. 88; Kimmell v. Skelly, 130 Cal. 555, 62 P. 1067; Wanstrath Real Estate Co. v. Wenz, 185 Mo.App. 162, 170 S.W. 345.

[17] See Donahue v. Reiner Co., 46 R. I. 302, 127 A. 359; Dole v. Sherwood, 41 Minn. 535, 43 N.W. 569, 5 L.R.A. 720, 16 Am.St.Rep. 731; Martin Realty Co. v. Fletcher, 103 N.J.L. 294, 136 A. 498; Blank v. Longenberger, 133 Misc. 32, 231 N.Y.S. 79; Metcalf v. Kent, 104 Iowa 487, 73 N.W. 1037.

[18] Greene v. Minn. Billiard Co., 170 Wis. 597, 176 N.W. 239.

Sykes, in accordance with the Slater offer; the sale had to be to Slater if not to Sykes, and the only way Sykes could get the property was by meeting the terms of the Slater offer. *Moreover, the terms of the Grady waiver show plainly that this was recognized.*" (Italics supplied.) Appellee's contention may be correct. But we have no way of knowing. The Grady waiver—like the brokerage contract—was not made a part of the record. Again, as in the case of the contract, there is nothing to indicate that the trial court ever saw the Grady waiver, or knew its terms. Certainly, the finding which the trial court made concerning the waiver does not show, plainly or otherwise, what it recognized in this respect. The finding is, obviously, based upon an allegation which appears in the affidavit of John A. Reilly, which was filed in support of appellee's motion to dismiss. The finding reads as follows: "6—On July 23, 1941 the firm of J. Dallas Grady & Son authorized in writing the acceptance of said Slater offer and payment of sales commission in accordance therewith."

We conclude, therefore, that the case was not one which was appropriate for disposition by summary judgment under Rule 56(c).[19] There are genuine issues, as to material facts, between these parties, which must be determined before it can be ascertained whether Sykes imposed an improper condition in his acceptance. And that is the important issue of the case. In view of our conclusion upon this point, we have no occasion to examine appellee's contention that appellant had no contract with Sykes sufficient to support this action. This is true, also, because the issue was not tried and decided by the District Court. When the case goes back the court will, if necessary, try it and make appropriate findings thereon.

Reversed.

---

[19] Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.