**STEVENS et al. v. HOWARD D. JOHNSON CO.**

No. 6038.

United States Court of Appeals Fourth Circuit.

Argued March 8, 1950.

Decided April 11, 1950.

---

7. Regulation 103, § 19.127(a)—1.

Thomas J. Michie and Lyttelton Waddell, Charlottesville, Va., for appellants.

H. Merrill Pasco and Lewis F. Powell, Jr., Richmond, Va. (Hunton, Williams, Anderson, Gay & Moore, Richmond, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by the plaintiffs from a summary judgment for the defendant in an action to recover damages for breach of a rental contract. Plaintiffs were the owners of a lot which they had purchased and leased to defendant under an agreement to erect a building thereon for which the defendant was to pay the cost of construction above a certain amount. Plaintiffs alleged that defendants had breached the contract by failure to approve contracts for the construction of the building or to take action looking to contracts for construction which it would approve. Defendant denied any obligation to proceed under the contract on the ground that it had not approved the cost of construction of the building and was not liable in the absence of such approval. Plaintiffs demanded a jury trial and defendant moved for summary judgment on affidavits. From the granting of the motion for summary judgment this appeal is taken.

The pleadings and affidavits disclose that plaintiffs had an option to purchase a lot of land near Staunton, Virginia, upon which defendant desired to operate a restaurant, and that they leased it to defendant and, relying upon the lease, proceeded to purchase it so as to comply with the lease. The lease was not an executory contract to take effect in the future, but an out

and out lease of the property for a term of ten years with privilege of renewal at the same rental for two additional five year periods. The rental provided was $1,000 per year, plus 10% of the total cost of the new building to be erected on the property, plus 6% of the gross sales of the restaurant to be conducted therein. Other provisions of the contract showing that it was something more than a mere provisional or executory agreement were sections relating to taxes, improvements, trade fixtures, public liability, plate glass insurance, remedies for breach, etc. The section relating to the construction of the new building, which is the section of importance here, is as follows:

"Section II. New Building.

"Lessors agree to construct on the demised premises, a building for the use and occupancy of the lessee, such building to be erected in accordance with approved plans and specifications, which are to be identified by the initialing thereof by the parties to this agreement.

"The total cost of construction, including materials, fees, supervision and all other necessary and incidental expenses, shall be borne by the lessors, up to, but not exceeding forty thousand dollars ($40,000.00). All expenses of construction in excess of said sum of forty thousand dollars ($40,-000) shall be borne by the lessee, but payment by lessee of such additional construction cost shall not operate, expressly or impliedly to create any equity for the lessee in the demised premises. And the lessee expressly covenants to indemnify and save the lessors harmless from the payment of any of the costs of such construction in excess of the sum of forty thousand dollars ($40,000.00). It is agreed, however, that all contracts and expenditures relating to the construction in excess of forty thousand dollars ($40,000) shall be submitted to and approved in writing by the lessee before the same become effective.

"Construction shall be commenced as soon as practicable after the execution of this lease, and lessors and lessees agree to diligently prosecute such construction to completion."

Defendant admits in its answer that it was to prepare the plans for the building; and it appears from the affidavits offered in connection with the motion for summary judgment that such plans were prepared and were approved and initialed by the parties as the contract provided. Contractors had indicated that the cost of constructing the building completed would be around $35,000 or $40,000; but, when bids were called for on the plans and specifications, the lowest bid submitted was $54,-000, and this did not include certain items which it was estimated would aggregate around $15,000. An affidavit submitted by plaintiffs shows that upon receipt of these bids, defendant refused to approve them and, notwithstanding the request of plaintiffs that the plans and specifications be revised so as to provide a building at a cost which would be approved, refused to take any action along this line or any other action looking to the carrying out of the contract, but on the contrary indicated that it would not proceed further thereunder because a change in the location of a highway had made the property undesirable as a site for a restaurant. In this connection, there was attached to the affidavit a letter of defendant clearly indicating that his change in the highway, and not the matter of cost, was the basis of the refusal to go forward. The letter was as follows:

"I received your letter regarding the Staunton location and can fully appreciate your position. On the other hand, I hope you appreciate our position in that when we signed the lease, we had a rough estimate from Valley Construction of $35,000 and as I have pointed out before, it is economically unwise for us to invest money in the actual building, because that increases our rent by just that much.

"However, there is one aspect which is more serious than that of the cost of the building and that is recent information which has come to me of the change in the highway. I understand from information which our Mr. O'Keefe received from the city manager of Staunton, that the road change is not only contemplated but actual contracts have been let. This by-pass will

start half a mile above our location and will divert all traffic away from our location. In view of this, I question whether or not it would be wise to go ahead with this investment until this matter has been thoroughly cleared up. It might be a great deal better if we postponed this particular location until we knew exactly what was going to happen, and at that time, if it did not look favorable,—to invest the same amount of money elsewhere. It would not do we nor you any good to have a location where we could not make any money."

The judge below was of opinion that there was no issue of fact in the case on the theory that defendant had an absolute right not to approve a construction cost for the new building in excess of $40,000.00, and that it appearing that the construction cost of the building upon which the parties had agreed was in excess of that amount, and the defendant having refused to approve it, no basis of liability under the contract remained. In this we think there was error.

We quite agree that the provision of the contract upon which defendant relies, viz., that "all contracts and expenditures relating to the construction in excess of $40,000 shall be submitted to and approved in writing by the lessee before the same become effective", reserves to defendant the right not to approve expenditures in excess of that amount; but this does not authorize summary judgment for defendant on the theory that it may absolutely repudiate the contract and refuse to proceed with it further merely because the cost of constructing a building in accordance with plans that it has furnished are greater than anticipated, and certainly not because a change in the location of a highway has rendered the location less desirable. If unwilling to pay the excess required for the construction of such a building, it should, in the exercise of good faith, have submitted other plans, as suggested by plaintiffs, within a cost limit which it would approve. There is nothing in the contract to support the view, nor is it a reasonable view, that defendant was to be absolved from all obligations under the contract merely because the cost of building in accordance with plans which it had itself submitted might exceed the stated amount. On the contrary, it was expressly provided that defendant would pay the excess above that amount of the cost of any building upon which the parties might agree subject to the right of disapproval above stated; and it was clearly contemplated that they would agree on a building to be constructed under the contract and would proceed with its construction as rapidly as possible.

It will be noted that the provision of the contract as to the approval by defendant of costs in excess of $40,000.00 was contained in the same section as the one relating to the approval of plans by the parties and the one binding the parties to diligently prosecute the construction of the work. Its manifest purpose was to give defendant control over the costs which it had agreed to assume, not to give it an option to cancel the entire contract by refusing either to approve costs in excess of the stated amount or to submit plans which would result in a cost which it would approve. To give the provision the latter interpretation would be as unreasonable as to hold that the defendant could be absolved of further obligation under the contract by refusing to submit or approve of plans under the first paragraph of the section. It would seem to be elementary that, where a contract contemplates action by a party, he cannot absolve himself of liability by failing or refusing to take the action. As said by this court, quoting from Prof. Williston, in George A. Fuller Co. v. Brown, 4 Cir., 15 F.2d 672, 678, " 'It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure.' 2 Williston on Contracts, par. 677; United States v. Peck, 102 U.S. 64, 26 L.Ed. 46; Kelly v. Fahrney, 7 Cir., 123 F. 280, 59 C.C.A. 298."

A number of questions arise, not only in connection with the breach of the contract, but also in connection with its proper interpretation and the damages

recoverable for breach. These, however, should be decided in the light of the evidence which may be adduced upon a trial, not upon the affidavits presented on a motion to dismiss. It must not be forgotten that, in actions at law, trial by jury of disputed questions' of fact is guaranteed by the Constitution, and that even questions of law arising in a case involving questions of fact can be more satisfactorily decided when the facts are fully before the court than is possible upon pleadings and affidavits. The motion for summary judgment, authorized by rule 56 Federal Rules of Civil Procedure, 28 U.S.C.A., which in effect legalizes the "speaking" demurrer, has an important place in providing a prompt disposition of cases which have no possible merit and in preventing undue delays in the trial of actions to which there is no real defense; but it should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. See Westinghouse Electric Corp. v. Bulldog Electric Products Co., 4 Cir., 179 F.2d 139, 146; Wexler v. Maryland State Fair, 4 Cir., 164 F.2d 477. And this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom. Paul E. Hawkinson Co. v. Dennis, 5 Cir., 166 F.2d 61; Detsch & Co. v. American Products Co., 9 Cir., 152 F.2d 473; Furton v. City of Menasha, 7 Cir., 149 F.2d 945; Shea v. Second Nat. Bank, 76 U.S.App.D.C. 406, 133 F.2d 17, 22. As was said by Mr. Justice Jackson, speaking for the Supreme Court, in Sartor v. Arkansas Nat. Gas. Co., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967: "Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."

■ We think that there were substantial issues of fact in this case upon which plaintiff was entitled to trial by jury and that the summary judgment for defendant must be reversed and the case remanded for further proceedings not inconsistent herewith.

Reversed and remanded.