The FREDERICK BUSINESS PROP-ERTIES COMPANY and to its own use and or the use of The Standard Fire Insurance Company, a Wholly Owned Subsidiary of Travelers Property Casualty Corporation, Plaintiffs,

v.

UNITED STATES of America (Commissioner of Internal Revenue Service), Defendants.

Civil Action No. 3:97–CV–141.

United States District Court, N.D. West Virginia, Martinsburg Division.

July 30, 1999.

Susan S. Snowden, Martin & Seibert, Martinburg, WV, Karon L. Martin, Philadelphia, PA, Brian J. Schaffer, Philadelphia, PA, for plaintiffs.

Helen Campbell, Altmeyer, AUSA, United States Attorney, Wheeling, WV, for defendant.

4th Cir., Richmond, VA, pro se.

### MEMORANDUM OPINION AND ORDER

BROADWATER, District Judge.

On this day, the above styled matter came before the Court for consideration of the government's motion for summary judgment. In its motion, the government argues, *inter alia*, that there can be no liability for negligence by the United States in this case. The government submits that there was no duty owed by the government, as a lessee, to protect the plaintiff's real estate from fire damage. After considering the memoranda of law and oral argument of both parties, the Court finds that the government's motion should be granted.

### I. FACTS

The Internal Revenue Service (IRS) entered into a lease agreement with Frederick Business Properties Company (Frederick) for office space at the Berkeley Plaza shopping center located within Berkeley County, West Virginia. The office space housed the Information Returns Branch (IRB) of the Martinsburg Computing Cen-

ter. Berkeley Plaza is located approximately eleven (11) miles from the main complex of the IRS's Martinsburg Computing Center (MCC).

Pursuant to an agreement of the parties, the IRS contracted with Frederick to install a security and fire alarm system for the IRB at Berkeley Plaza. The system was installed pursuant to various IRS specifications. The alarm system was then wired into the security alarm panel located at the MCC.

In the early morning hours of Sunday, March 26, 1995, a fire began at the IRB in Berkeley Plaza.[1] On this night, there were two IRS police officers on duty. Officer Daughtridge was posted at the security monitors in the MCC, and Officer Newell conducted vehicle patrol.

Upon first receipt of the fire alarm, Officer Daughtridge tried to contact Officer Newell by radio. Daughtridge failed by radio to clearly communicate the situation to Newell. Next, Daughtridge physically left the building in order to communicate the fire alarm to Newell in person. Upon receiving this information from Daughtridge in the MCC parking lot, Newell proceeded to travel to the IRB at Berkeley Plaza using lights and siren.

Daughtridge returned to the main building of the MCC and attempted to dial 911. This first call was unsuccessful. Daughtridge again attempted to dial 911 two more times. These calls were also unsuccessful. Next, Daughtridge decided to call the Berkeley County Sheriff's Office. Before this call was completed, Daughtridge heard that the Bedington Volunteer Fire Department had been dispatched to Berkeley Plaza. Daughtridge then contacted Newell by radio and informed him that the fire department was on its way.

There is a disagreement as to the elapsed time between the IRS's first notification of a fire alarm and response by the fire department. In giving deference to

the assertion by the plaintiff, the response time may have been fourteen (14) minutes faster.

The cause of the instant fire was thoroughly investigated. The office of the West Virginia State Fire Marshal, the Bureau of Alcohol, Tobacco, and Firearms, a certified fire inspector, as well as Frederick's insurance company conducted investigations of the fire to determine its origin and cause. While ruling out intentional acts, none of these investigations could determine the exact cause of the fire.

## II. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, as the United States Supreme Court noted in *Anderson v. Liberty Lobby, Inc.,* Rule 56 itself "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. *See also Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979) (holding that "summary

---

1. The actual time that the fire began is in dispute between the parties. However, the exact time of fire and response by the fire department are not pertinent to this opinion.

judgment 'should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.' ") (citing *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950)).

In *Celotex*, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. *Oksanen v. Page Memorial Hosp.*, 912 F.2d 73, 78 (4th Cir.1990), *superseded on rehearing*, 945 F.2d 696 (4th Cir.1991). Additionally, "[o]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

### III. DISCUSSION OF LAW

The plaintiffs have brought this action pursuant to the terms of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, §§ 2671–2680. The FTCA constitutes a waiver of sovereign immunity of the United States with regard to "... injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Therefore, pursuant to the terms of the FTCA, the United States can only be liable herein if a private tenant would be liable to his landlord in accordance with the law of the state of West Virginia under similar circumstances.

The plaintiff cannot prevail on a theory of negligence due to the absence of a duty of the defendant to protect the leased premises. "To establish a cause of action in negligence, it must first be shown that the alleged tortfeasor was under a legal duty or obligation requiring the person to conform to a certain standard of conduct." *Reed v. Phillips*, 192 W.Va. 392, 452 S.E.2d 708, 712 (1994). Also, "[w]here there is no legal duty to take care, there can be no actionable negligence." *Id.* 452 S.E.2d at 712. Furthermore, absent a common law duty, liability can be imposed pursuant to an agreement between the parties. *Id.* 452 S.E.2d at 710.

In *Travelers Insurance Co. v. Priority Business Forms, Inc.*, 11 F.Supp.2d 194 (D.R.I.1998), the United States District Court for the District of Rhode Island considered a factual situation similar to the one before this Court. In the Rhode Island case, Travelers was the plaintiff as subrogee of Carol Pearl, Inc., the owner of a building leased by the defendant. The District Court granted the lessee's motion for summary judgment, rejecting the lessor's argument that its tenants should be held liable for damage from a fire set by vandals. The landlord argued that it had detrimentally relied on the tenant's earlier use of a burglar alarm. However, the burglar alarm was no longer functioning when the fire occurred.

In granting the tenant's motion for summary judgment, the Court first considered the plaintiff's claim of negligence under Rhode Island law. The District Court held that "[c]learly, Priority owed no duty to Carol Pearl to maintain either the existing Sonitrol burglar alarm or any other such system. No such duty can be found in the Lease, and none exists at common law." *Travelers Insurance Company, Inc.*, 11 F.Supp.2d at 197. Rhode Island's requirements in order to prove a claim of negligence are identical to those require-

ments set forth above which exist in the state of West Virginia.

Travelers also made an argument of detrimental reliance. The District Court first examined whether or not the theory of liability premised upon RESTATEMENT (SECOND) OF TORTS § 323 (1965), which is entitled "Negligent Performance of Undertaking to Render Services", had been adopted by the state of Rhode Island. After citing the ambiguity which existed in Rhode Island with regard to § 323, the Court stated as follows: "[m]ore importantly, even if the rule of § 323 were the law in Rhode Island, Travelers' claim thereunder would fail; Priority quite simply did not 'undertake' to provide any 'service' to Carol Pearl upon which the latter could rely." *Travelers Insurance Company, Inc.,* 11 F.Supp.2d at 203.

As part of its analysis, the District Court examined a Fourth Circuit decision, *Florida Auto Auction of Orlando, Inc. v. U.S.,* 74 F.3d 498, 504–05 (4th Cir.1996). In that case, the Fourth Circuit noted that § 323 of the Second Restatement of Torts had been adopted by the State of South Carolina. Nevertheless, the Court found that the appellee's argument that Customs agents failed to enforce a particular regulation with reasonable care and that appellees suffered harm as a result of their reliance upon customs agents to use such care, was unpersuasive. The reason given by the Fourth Circuit for that finding was the recognition that the purpose of the regulations in question was not to provide protection for the plaintiff. Instead, the regulations were enacted for the purpose of deterring the removal of stolen automobiles from the United States.

After completing this analysis, the Rhode Island District Court made the following finding:

> In the present case, it is clear that Priority did not undertake to provide any 'service' to Carol Pearl under § 323. That Priority's maintenance of the Alarm may have been known by Carol Pearl, and may have benefited [sic] Car-

ol Pearl, does not mean that in maintaining the Alarm, Priority ever undertook to do anything for the *purpose* of benefiting [sic] Carol Pearl. Rather, Priority obviously maintained the Alarm for the sole purpose of protecting its *own* property, *not* that of its landlord.

*Travelers Insurance Company, Inc.,* 11 F.Supp.2d 194, at 203.

■ In this case, there is no legal duty or obligation requiring the IRS to conform to a certain standard of conduct. Frederick and the IRS were involved in a lessor-lessee relationship. Also, there is no evidence that would tend to show that the IRS's negligence caused the fire. Further, Frederick alleges that the negligent act of the IRS was failure to respond to the fire alarm in a reasonable manner. If there were evidence to show that the IRS's negligence somehow caused the fire, then it would be under a duty to conform to a certain standard of conduct in responding to the alarm. Considering the evidence in a light most favorable to the plaintiffs, the only indicia of unreasonable conduct is an alleged fourteen (14) minute delay in response to the fire alarm. This evidence coupled with the lack of negligence on behalf of the IRS in causing the fire does not show a breach of duty. Furthermore, there is no clause in the lease agreement which would tend to impose a duty on the IRS to act reasonably in responding to the fire alarm. Accordingly, the Court finds that there is not a genuine issue of material fact regarding the issue of negligence in this case.

## IV. CONCLUSION

In this case, there was no duty upon the IRS to protect the leased premises. The IRS's lack of negligence in causing the fire and lack of provision in the lease agreement imposing a duty to conform to a certain standard of conduct both support this conclusion.

It is, therefore, **ORDERED:**

1. That the defendant's motion for summary judgment (Document No. 21) is **GRANTED**;

2. That, there being nothing further for the Court to consider, this case be stricken from the active docket of the Court.